RICHARD BURKE, as Administrator, etc., Respondent, *v*. SILAS H. WITHERBEE et al., Appellants.

Defendants owned and worked an iron mine. The ore was taken out of the mine upon cars drawn upon a track by a cable, to which the car was attached by a hook. Two cars were used, one of which was loaded while the other was being drawn out, and on return of the empty car, the hook was shifted to the loaded one. As an empty car was descending, the hook in some way became detached and plaintiff's intestate was struck and killed by the car. In an action to recover damages it appeared that in other mines as well as this where two cars were thus operated the hook was always used on account of the facility with which it could be changed from one car to another. It had been used in this mine over a year, night and day, without the happening of any previous accident of the kind. *Held*, that the evidence did not justify an inference of negligence on the part of the defendants ; and that a refusal to nonsuit was error.

The master does not owe to his servants the duty to furnish the best known or conceivable appliances ; he is simply required to furnish such as are reasonably safe and suitable, such as a prudent man would furnish if his own life were exposed to the danger that would result from unsuitable or unsafe appliances.

(Argued February 6, 1885 ; decided April 14, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made January 22, 1884, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

*M. D. Grover* for appellants. If the hook was a reasonably safe appliance, it was not negligence in defendants not to adopt some other appliance which may have been more safe. (Whart. on Neg., § 213; *Stringham* v. *Stewart*, 27 Hun, 562; *Charles* v. *Taylor*, 30 Eng. R. [Moak] 346.) That the hook slipped off at the bottom of the track when the bail dropped down as the car stopped is no evidence that such thing could have happened, or should have been anticipated as probable or possible when the car was moving down the track and by its weight drawing the hook and cable and unwinding the drum. (*Dongan Case*, 56 N. Y. 1; *McMahon* v. *R. R. Co.*, 50 Supr. Ct. 507.) As to master and servant, under the evidence in this case, the fact of the injury raises no presumption or inference of neglect. (*Sheldon* v. *H. R. R. R. Co.*, 29 Barb. 226; *Kendall* v. *Boston*, 19 Am. Rep. 446; 118 Mass. 434.) The risk was obvious and incident to Burke's employment, and one which he assumed. (*Gibson* v. *Erie R. Co.*, 63 N. Y. 449; *De Forrest* v. *Jewett*, 88 id. 264.)

*A. W. Boynton* for respondent. The defendants owed to their employes the duty to furnish adequate and proper machinery for the use to which it was to be applied. (*Flike Case*, 53 N. Y. 553; *Laning Case*, 49 id. 532; *Cone Case*, 81 id. 208.) The questions whether the hook was an adequate and suitable implement for the use to which it was applied by the defendants, and of their negligence in so using it, and of its being such as experience had shown to be proper, were rightly submitted to the jury, and their finding thereon is conclusive. (*Kain* v. *Smith*, 89 N. Y. 375; *Hart* v. *H. R. B. Co.*, 80 id. 622; *Smith* v. *B.*, etc., *M. S. P. Co.*, 86 id. 408; *Ochsenbein* v. *Shapley*, 85 id. 224; *Durkin* v. *Sharp*, 88 id. 225; *Mehon* v. *S.*, etc., *R. R. Co.*, 73 id. 585; *Massoth* v. *D. & H. C. Co.*, 64 id. 529; *Plank* v. *N. Y. C. & H. R. R. R. Co.*, 60 id. 607; *Gottlieb* v. *N. Y., L. E. & W. R. R. Co.*, 29 id. 637;

*Ernst* v. *H. R. R. R. Co.*, 35 id. 9.) The fact that the accident and injury happened raised a presumption of negligence on the part of defendants sufficient to carry the case to the jury. (*Lyons* v. *Rosenthal*, 11 Hun, 46 ; *Mullen* v. *St. John*, 57 N. Y. 567.) For one's own negligence there is no difference between liability to a stranger or to a servant. (*Malone* v. *Hathaway*, 64 N. Y. 8.) Even if there was negligence of a co-servant it would not excuse the defendants if the hook was defective. (*Cone* v. *D. L. & W. R. R. Co.*, 81 N. Y. 206.) Even if the deceased knew of the defect, it was a question for the jury to decide whether he contributed to the accident. (*McMahon* v. *P. H. I. O. Co.*, 24 Hun, 48 ; *Strong* v. *B. & A. R. R. Co.*, 58 N. Y. 56 ; *Hawley* v. *N. Y. O. R. R. Co.*, 82 id. 370; 17 Hun, 115.) The deceased had the right to assume the suitable character of the hook for the purpose it was furnished to answer. (*Swords* v. *Edgar*, 59 N. Y. 28 ; *Willey* v. *Mulledy*, 78 id. 310.)

EARL, J. This action was brought to recover damages on account of the death of the plaintiff's intestate, which was alleged to have been caused by the negligence of the defendants.

In Februray, 1883, the defendants owned and worked an iron ore mine in Essex county in this State. The bottom of the mine was reached by a track with wooden rails descending with varying grades a distance of about one thousand feet. The ore was hoisted in a four-wheeled iron cart drawn upon the track by means of a wire cable attached to a drum worked by a stationary engine at the mouth of the mine. The car weighed about a ton, and carried about two tons of ore at a load. In front of the car and firmly attached to it, there was a large iron bail, and to the cable was attached a large iron hook weighing about forty pounds and measuring from its point to the center of its curve six or seven inches; and the car was fastened to the cable by means of this hook placed over the bail. The car when loaded was drawn up by the revolving drum, and then after being unloaded, it returned by its own weight to the bottom of the mine, its motion being controlled by a brake and

appliances connected with the drum. There were twenty-five men working in the mine, some of them at the lower end of the track. On the day of the accident, the intestate, with other men, was working there, and while a car was descending, about two hundred feet from the lower end of the track, the hook, in some unaccountable way, became detached from the bail, and the car descended rapidly, and ran against and killed the intestate and one other person.

There is no claim that there was any defect in the car, or track, or cable, and none of the appliances broke. The sole cause of the accident was the slipping of the iron hook from the bail, and the sole complaint of the plaintiff is that there should have been a bolt through the hook fastened with a key, thus confining the cable; or that the cable should have been attached to the bail by means of a socket or of a clevis with a bolt and key, so as to fasten them securely together.

The defendants did not owe the duty to their workmen to furnish the best known or the best conceivable appliances; but they were under a duty to furnish reasonably safe and suitable appliances — such as a prudent man would furnish if his own life were exposed to the danger that would result from unsuitable or defective appliances.

There was no conflicting evidence upon the trial of this case, and the sole question to be determined is, whether the undisputed facts justified the imputation of negligence to the defendants. It matters not that the jury have inferred negligence, and that the judges of the General Term have also, although with some hesitation, upheld the verdict of the jury. A motion for a nonsuit having been made at the trial, we must be able, judging independently, sitting in review of the verdict and the judgment, to find that upon the whole case the inference of negligence could fairly and properly be drawn, or else the judgment should be reversed.

Now what were the facts? There were two cars used in this mine so that one could be loaded while the other was being drawn up. As one car came down it ran upon a side track, and then the cable was taken off and placed upon the other

car which had been loaded and it was drawn up. It was important to make this change of the cable quickly, as a car passed up and down every ten minutes. The proof showed that in this mine and in other mines where two cars were thus operated, the hook was always used on account of the facility with which the changes from one car to the other could be made. It was usual when but one car was used, to fasten the cable to the bail with a clevis or socket, with a bolt through it fastened · with a key. It was proved without any contradiction that such a mode of fastening would not answer when two cars were used, for the reason that it would take so long to change the cable from one car to the other, that there would be no economy or advantage in the use of two cars. If ten minutes were required to change from one car to the other, it would be much more judicious and economical to use one car than two. In the transaction of any large business, economy, cheapness, facility and convenience for the necessary operations, are the fundamental conditions of success, and they cannot be lost sight of or disregarded. They may not and frequently do not consist with the greatest safety for those engaged in the business ; but they may and should consist with that reasonable care, on the part of a master for his servants, which a prudent man would, under the same circumstances, take of his own person.

The hook for fastening the cable to the car had been used in this mine several years, and had also been used in other mines in different parts of the country, and before this accident it had never, so far as the evidence disclosed, failed to answer its purpose. In this mine, for more than a year, by it a car had been hoisted every ten minutes night and day, thus during that time making at least 50,000 trips, and yet it never once parted from the cable on the passage up or down. In this mine alone, cars drawn by a hook must have made several hundred thousand passages without a single accident. What more could any reasonable or prudent man have to justify him in believing that this convenient appliance was also a safe and proper one? What greater or different tests could it have been subjected to before a mine-owner could use it without the im-

putation of negligence? It seems to us quite inadmissible, if not preposterous, to attribute negligence to a mine-owner for using an implement which had been employed in different mines and which under varying conditions, upon countless occasions, uniformly answered its purpose without injury to any one. (*Loftus* v. *Union Ferry Co.*, 84 N. Y. 455.)

It is true that one witness testified that he had known the hook to leave the bail when the car was permitted to go down and strike against the timbers at the end of the track, but he never knew it to part from the bail on any other occasion, or in the passage up or down the mine. Another witness, who had been superintendent of defendants' mine for more than twenty years, testified that he had heard of cases where the hook had become detached from the car ; but it is evident that he had reference to the cases mentioned by the prior witness, because he had before testified that he had never " heard or known of a car becoming detached while going down any track in any of those mines (referring to this one and others) with this hook," and he afterward testified that prior to this accident he had never " heard of a car becoming detached from the hook, never heard of such a thing." So the broad statement hereinbefore made, that this was the first time that the hook was ever known or heard by any of the witnesses, of great experience and observation, to have become detached from the car in going up or down a mine, is without dispute in the evidence.

But there is still more. This hook was in plain sight of the men operating the mine. They rode up and down in the car and they worked in the mine day after day, exposed to any danger which might come from a failure of the hook to perform its proper work, while making nearly one hundred and fifty trips daily ; yet none of them ever complained of it as inadequate and, as we must infer, none of them believed it to be so. They were just as capable to judge of its safety and adequacy as the defendants, and certainly would not have exposed their lives without some protest if they had supposed there was any danger from the use of the hook. No person was called as a witness who ever heard any complaint or allegation anywhere

before this accident that the hook was an unsafe or insufficient implement. Under such circumstances can the defendants be charged with negligence? Were they bound to know more than every one else? Ought they to have perceived danger that was not visible to any one else, and which those whose lives were most exposed were not sufficiently wise or vigilant to foresee?

It is a mistake for one to take his stand after an accident and to impute responsibility from a view thus obtained. It is nearly always easy after an accident has happened to see how it could have been avoided. But taking our stand before this accident, the very first of the kind, so far as we know, that ever occurred, we can, upon the facts of this case, see no ground for imputing against the defendants the want of that ordinary care, diligence and foresight which they, as employers, owed to the men in their service.

The judgment should, therefore, be reversed, and a new trial granted, costs to abide event.

All concur, except RUGER, Ch. J., and DANFORTH, J., dissenting.

Judgment reversed.