IDA MAY MORSE, AS ADMINISTRATRIX, ETC., OF JOSEPH II. MORSE, DECEASED, RESPONDENT, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Negligence — duty of a railroad company in respect to providing for the proper coupling of the engine to the tender.*

A pusher engine, used to assist in moving trains going east up a grade near a station on the defendant's road, after having pushed a train to the summit of the grade, was switched upon an adjoining track that it might return to the station and assist in pushing another train up the grade. While so returning it ran against the engine of another of the defendant's trains standing upon the track with such violence as to drive the tender of the pushing engine upon the top of the second engine. By so doing the pusher engine became disconnected from its tender, parted therefrom; and ran east about four miles where it collided with another of the defendant's engines and killed a brakeman employed thereon. The pusher engine was connected with its tender by a draw-bar or coupling. but had no safety chains to hold them together in case the coupling was broken.

Upon the trial of this action, brought to recover damages for the negligent killing of the brakeman, the plaintiff's intestate, the court held that the jury might find the defendant guilty of actionable negligence because of its omission to have the engine and tender provided with safety chains, if they also found that the safety chains were necessary for that kind of engine, and that the decedent's death was caused by their absence.

*Held*, that this was error. (HARDIN, J., dissenting.)

That there was no evidence that an engine and tender, " used as a pusher," had ever separated for the lack of safety chains, and that the evidence in this case did not show that this was so likely to occur as to authorize the jury to find that the omission to use them was actionable negligence. (FOLLETT and CHURCHILL, JJ.)

That the absence of the safety chains was not an approximate cause — *a causa causans* — of the injury to the plaintiff's intestate. (CHURCHILL, J.)

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury at the Onondaga circuit, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Louis Marshall*, for the appellant.

*Frank H. Hiscock*, for the respondent.

FOLLETT, J. :

Appeal from a judgment, entered upon a verdict of $5,000, and from an order denying a motion for a new trial, made upon the minutes upon the ground that the verdict was contrary to the evidence, and also upon the exceptions. The case contains all of the evidence.

From Clyde station eastward for two or three miles there is an ascending grade, to overcome which heavy freight trains require a second locomotive, called a " pusher." The road has four through tracks numbered from one to four inclusive. No. 1 is the south, and No. 4 is the north track. Nos. 1 and 2 are used for passenger trains, and are not involved in this controversy. West bound freight trains use No. 4, and east bound freight trains use No. 3. December 20, 1882, between six and seven o'clock P. M., locomotive No. 225 (a pusher), in charge of engineer John Duff, assisted an east bound train to the summit on track No. 3. An east bound coal train was left standing on track No. 3 near Clyde station, waiting the return of the pusher, which was to assist the coal train to the summit. After leaving the freight train at the summit, locomotive 225 (the pusher), was switched to track No. 4, and backed westward for the purpose of returning and taking its place in the rear of the coal train (then standing on track No. 3), and assisting it to the summit. Before Duff returned with the pusher on track 4, engineer Sullivan in charge of locomotive No. 357 (under the direction of one Henry Smith, who had authority), drew a train of empty cars on to track No. 4 and stopped, awaiting orders from Smith to back the train. Whether the head-light of 357 was burning, was a disputed question on the trial, Sullivan and Smith swearing it was, and Duff swearing that it was not. Duff swears that he had two head-lights burning, one at the head of his locomotive and one at the rear of his tender. In backing No. 225 down the track it ran on to number 357 with such force that the tender of 225 mounted the front of 357, and was attached to it so firmly that it remained there and was taken back in that position to the yard where they were pried apart. Duff and Sullivan, when their locomotives were nearly together, saw the impending danger, and each reversed and gave his engine steam, but not in time to prevent the collision. Duff swears, " I had her (throttle) wide open."

Sullivan swears, " I opened my engine and got her started, and we struck." By the collision Duff, the engineer, was thrown into the tender, and before he was able to return to the locomotive it parted from the tender and ran without control with its throttle wide open, eastward on track No. 4 about four miles, when it collided with locomotive 607, in charge of engineer Thomas Bell, killing Joseph Morse, a brakemen employed on the train drawn by locomotive 607.

The following acts and omissions, alleged to have been negligent and to have caused the accident, are set forth in the complaint: First. That defendant neglected to notify the engineer of locomotive No. 225 (the pusher), verbally or by lights or signals, that locomotive 357 and its train stood on track four. Second. That defendant neglected to connect with safety chains the tender and engine of locomotive 225, by reason of which the engine and tender separated and the engine escaped. The learned trial judge held that the acts and omissions first mentioned were of decedent's co-servants and not actionable; but held that the omission secondly mentioned was actionable if the jury found three propositions, to wit: First. That safety chains for locomotive 225 were necessary for protection against danger and accident. Second. That locomotive 225 was not provided with safety chains. Third. That decedent's death was caused by the absence of safety chains.

The jury found that the safety chains were absent; that their absence was negligence, and that their absence or this negligence caused decedent's death. Whether the evidence was sufficient to warrant the submission of the question of negligence to the jury seems to be the pivotal question of this case. All of the witnesses agree that the purpose of safety chains is to prevent the engine and tender from separating in case the drawbar, or coupling between the two, breaks. When a train is moving forward this drawbar, or coupling, sustains the draft of the whole train and consequently is more likely to break from the strain than any connection between cars nearer the rear of the train. The witnesses also agree that this coupling is most likely to break upon a locomotive used for pulling cars, and is not likely to break in a locomotive used for pushing cars. This is so self-evident as not to require demonstration by evidence or argument. The witnesses agree that when a locomotive is used

solely for pushing this connection may be broken by a collision, as was demonstrated by the collision in question.

The learned judge, in discussing this question in his charge, said: "Now, if an engine is used only for pushing purposes, the center coupling (this bar and the castings) are not at all likely to be severed or broken by pulling, because it would have nothing to pull except the tender, so that the danger of severing the connecting, the center coupling, would not be very great in a pushing engine from pulling a heavy load. But it may be broken by a collision while the engine is being used for pushing purposes, while the engine is either going up the hill or returning to the yard. There seems to have been a very practical illustration of it in this case; here, concededly, this engine, used for pushing purposes, while it was returning from the hill to the yard did collide with another engine and it did break its coupling."

The fact that an injury has resulted from an act or omission of the employer, which is often no more than proof that it is possible, · though not probable that an injury may flow from the act or omission, is not enough to render the employer liable. The employe must go further and show that the act or omission complained of was such as a prudent employer, having due regard to the hazards of the business, would not do or omit. In other words, the issue in such cases is not, whether it is possible for an accident or an injury to occur from the act or omission complained of, but whether an accident or injury is so probable as to render the act or omission negligent. Failing to provide fire escapes from some kinds of buildings might be actionable negligence, but proof of their omission from another kind of a building might not be sufficient to justify the submission of the question of negligence to a jury. As has been repeatedly held by the Court of Appeals, the question whether an issue of fact is presented for the jury, depends upon the circumstances of the particular case. *Ellis* v. *New York, Lake Erie and Western Railroad Company* (95 N. Y., 546) is pressed upon our attention. In that case the person killed was a brakeman upon a freight train, who, in the discharge of his duty, was required to frequently pass over and at times, remain upon the platform of the caboose. He was killed by reason of the omission to supply buffers, which would have prevented the body of the caboose from

striking the body of the preceding car. In the ordinary movement of freight trains, as well as when accidents occur, the bodies of cars frequently strike unless buffers are provided. So extremely probable is such a result that it was held to be negligence, under the circumstances of that case. Ordinary prudence and foresight would have guarded against such an accident.

In the case at bar there is no evidence that an engine and tender used as a pusher, had ever separated for the lack of safety chains, and we do not think that the evidence shows that this was so likely to occur as to authorize the jury to find that their omission was actionable negligence.

The judgment and order are reversed and a new trial granted, with costs to abide the event.

CHURCHILL, J., concurs in the following memorandum :

I concur with the opinion of FOLLETT, J. I agree with the result arrived at by him on the farther ground, that the absence of check chains connecting the engine and tender of locomotive No. 225 was not an approximate cause — a causa causans — of the injury to plaintiff's intestate, and that as to this there was no question for the jury.

HARDIN, P. J. (dissenting) :

I am inclined to the opinion that it was a question of fact upon the evidence : First. Whether ordinary care and prudence required the defendant to supply as a part of its engine and tender, suitable check chains, and if such were required by ordinary care and prudence; then, Second. Whether their absence was the proximate cause of the injuries complained of. (Ellis v. N. Y., L. E. & W. R. R. Co., 95 N. Y., 552.) These questions of fact were submitted to the jury and have been found against the defendant. The evidence and the facts and circumstances presented, were sufficient to require a submission to the jury and to uphold their finding of negligence on the part of the defendant. (Burke v. Witherbee, 98 N. Y., 562.) Their verdict should be accepted and judgment affirmed.

Judgment and order reversed and a new trial ordered, with costs to abide the event.