CHARLES F. CARLSON, RESPONDENT, *v.* THE PHŒNIX BRIDGE COMPANY, APPELLANT.

*Defective material — when the master, making instruments from it, is not liable for an injury to a servant arising from the breaking of such instruments.*

In an action, brought to recover damages for personal injuries, it appeared that the defendant was a contractor, engaged in the construction of an elevated railroad on which the plaintiff was employed as a laborer to raise girders to their proper position in the structure, by fastening a rope to the girder and steadying the same while it was being elevated. The girders were about seventy feet long, five feet wide and weighed from four to ten tons. When one of these girders was to be raised a hook at the end of the rope or chain was inserted under the flange, and sufficient power was applied to turn the girder on to its edge so as to permit the insertion of blocks under it. The plaintiff was injured by reason of the hook giving way when the girder had been partially raised.

The hook had been in use nearly three months before the accident, in the same service; was one inch and three-quarters in diameter, and was made by a blacksmith in the employ of the defendant, from a bar of iron which was purchased as of the best quality from a reputable house, from which bar a number of other hooks had been made, none of which had given way. The person who purchased the bar was the general superintendent of the work, and in the order therefor he specified the very best of refined iron without limitation of price, and it appeared that such iron was tested in its manufacture to make it homogeneous.

It was claimed by the plaintiff that had proper tests been applied to the bar of iron from which the hook was made the defect which caused the break therein would have been disclosed, and that, although the iron, such as the bar from which the hook was made, was subjected to tests before it was placed on the market, yet it was the duty of the defendant to cause additional tests to be made before making the bar into hooks. The question whether a prudent employer was required to make such further tests or to do more than this company did was submitted to the jury.

*Held,* that the bar of iron having been purchased in this manner, even if a test made by the defendant would have detected the latent defect in the iron, yet the institution of such an examination by it would have involved a degree of extraordinary vigilance and caution which it was not required to exercise.

If materials, the best of their kind, are purchased, and articles are constructed from them by skillful workmen, and there is nothing to indicate any deficiency in them, a master is authorized to put them in the hands of his servants for use.

APPEAL by the defendant from a judgment, entered, after a trial at the Kings County Circuit before the court and a jury, in the office of the clerk of the county of Kings on the 10th day of

July, 1889, in favor of the plaintiff, by whom a verdict was recovered for $25,000; and also from an order, entered in the same office on the same day, denying the defendant's motion to set aside the verdict and grant a new trial.

*Albert L. Boardman,* for the appellant.

*J. Edward Swanstrom,* for the respondent.

DYKMAN, J.:

This is an action for the recovery of damages for personal injuries sustained by the plaintiff. The defendant was the contractor for the construction of the Kings County Elevated Railroad, and the plaintiff was one of a company of laborers employed to raise the girders to their position in that structure. It was his business to fasten a rope to the end of the girder, and steady the same while it was in the process of elevation, so as to prevent it from swinging or turning in its ascent. The girders were about seventy feet long and five feet wide and weighed from four to ten tons, and the plaintiff was injured by one of the largest and heaviest.

When one of these girders was to be raised a hook at the end of a rope or chain was inserted under the flange, and then sufficient power was applied to turn it on its edge, and raise it sufficiently high to permit the insertion of blocks under it, upon which it was permitted to rest until other apparatus was applied preparatory to its elevation to its final resting place.

When the plaintiff sustained his injuries the hook had been inserted in the flange in the usual manner, but when the power was applied and the girder had been partially raised, the hook gave way, and the girder fell upon the plaintiff's foot, crushed and lacerated it to such an extent that amputation became necessary and his leg was taken off about six inches below the knee.

Such are the facts, and the trial of the action resulted in a verdict in favor of the plaintiff for $25,000. The sole charge upon which the action is based and the recovery was obtained had relation to the hook which failed to sustain the girder and broke under its weight. The hook had been in use nearly three months in the same service, and was one inch and three-quarters in diameter. It was made by a blacksmith in the employ of the defendant, from a

bar of iron which was purchased for the best quality from a reputable house, and a number of other hooks were made by the same man from the same bar, and none of the others gave way.

It was claimed, on the part of the plaintiff, that certain tests to which the bar of iron might have been subjected before its use would have disclosed the defect which caused the break; and although it appeared that the best refined iron, such as the bar from which this hook was made, is subjected to tests before it is placed on the market, yet the plaintiff claimed that it was the duty of the defendant to have caused additional tests to be made before making the bar into hooks; and the question whether a prudent employer was required to make such further tests, or do more than this company did, was left to the jury for determination.

The material facts were undisputed, and from them the jury was permitted to draw the inference of negligence; and we must now decide whether the uncontroverted facts in the case justified the imputation of negligence to the defendant; and if we find from the whole case that the inference of negligence could not properly be drawn, it will be our duty to reverse the judgment. (*Burke* v. *Witherbee*, 98 N. Y., 565.) It is the duty of a master to furnish adequate and suitable implements for the use of his servant, and a safe and proper place for the prosecution of his work, but such duty is not absolute, and it is discharged by the exercise of reasonable care and prudence in the manufacture or selection of such implements and appliances. (*Probst* v. *Delemater*, 100 N. Y., 272.) Guided by this rule, we must determine whether the servants of the defendant exercised reasonable care in the selection of the bar of iron from which this hook was made, and in making the hook.

The person who purchased the bar was the general superintendent of the work, and in the order he specified the very best of refined iron, without limitation of price; and the case shows that such iron is tested in its manufacture to make it homogeneous, and that such is known to be the practice at all well-established mills. The bar of iron having been purchased in such manner, it was delivered to the blacksmith of the company, who made a number of hooks from it, and among others the one that broke. There is no charge of unskillfulness against this man, and he worked the iron and made the hooks in the usual manner. The iron worked well, and there

was nothing to indicate any defect. It bent without showing any fracture, and there was nothing to manifest any weakness, flaw or imperfection either in the iron or in the hook.

After the hook was made it was put in use and endured the heavy strains to which it was subjected for about three months and then broke from a latent defect. Do these facts manifest the absence of ordinary care? Let us assume, what is quite uncertain, that a minute examination and test would have detected the latent defect in the iron in this case, yet the institution of such an examination would evidence extraordinary vigilance and caution, and that is not ever exacted from a master in respect to the provision of implements for his servant; ordinary and reasonable care, such as a prudent man would take for the protection and safety of his own person, is the extent of the law's requirement, and the exaction of more, would destroy the well-settled rule of liability, for there is no conceivable defect which may not be discovered by some possible test. The law is designed for application to the ordinary affairs of business and every day life. All men are not scientists, and all are justified in acting upon certain assumptions and appearances. If materials, the best of their kind, are purchased and articles are constructed from them by skillful workmen, and if there be nothing to indicate any deficiency, men in ordinary life use them, and place them in the hands of their servants for use.

Experience teaches us that such articles are not usually subjected to any tests before they are put in use. We do not test a harness or a wagon which we order from a reputable dealer before we use the same, and there were no circumstances surrounding the manufacture of the hook in question which would induce a prudent man to depart from the usual course of procedure and adopt special and extraordinary precautions.

The scientific expert witness of the plaintiff only said the quality of iron should be known before hooks were made from it, and the servants of the defendant were in possession of such knowledge. They knew the quality of the iron and believed it to be the very best, and, with such knowledge and such honest belief, there is no rule of law which required them to resort to extraordinary tests before they used the iron.

It is true the jury has drawn the inference of negligence against

the defendant, but our conclusion, after a most thorough examination, is that such inference was unjustified and erroneous.

Such determination upon the main question disposes of this appeal, and renders unnecessary any examination of the other questions involved in the case.

The judgment should be reversed and a new trial granted, with costs to abide the event.

BARNARD, P. J., concurred.

Judgment and order denying new trial reversed and new trial granted, costs to abide event.