### PRENTICE v. VILLAGE OF WELLSVILLE.

(Supreme Court, General Term, Fifth Department. January 18, 1893.)

1. MUNICIPAL CORPORATIONS—USE OF EXPLOSIVE—NEGLIGENCE—INJURY TO EM-
PLOYE.
    Where, in removing stumps from a village park, an explosive is used, which the president of the village has reason to believe is a well-known compound, highly recommended, and approved both by scientific analysis and long use.

and it does not appear that he is negligent in failing to discover that it is not precisely what it purports to be, such village is not liable for the death of an employe by a premature explosion of the compound, while he is assisting in its use, with the permission of such president, though the compound be defective.

2. SAME—ASSUMPTION OF RISKS.
   Such employe assumes the risks incident to the hazardous nature of the employment, since they are as well known to him as to the president of the village.

Motion for new trial on exceptions.

Action by Hannah Prentice, as administratrix of Thomas Prentice, deceased, against the village of Wellsville, for the death of plaintiff's intestate, caused by defendant's negligence. There was a judgment of nonsuit, and a motion by plaintiff for a new trial on a case and exceptions was ordered to be heard in the first instance at the general term. Motion denied.

Argued before DWIGHT, P. J., and MACOMBER, J.

C. H. Brown, for the motion.

C. A. Farnum, opposed.

DWIGHT, P. J. The plaintiff brought her action for damages resulting from the death of her intestate, Thomas Prentice, caused, as alleged, by the negligence of the defendant. The deceased was in the employ of the defendant, engaged in clearing up a plot of ground for a village park. There were stumps to be removed, and the president of the village hired a a man by the name of Irish, who was selling an explosive preparation known as "Van Campen's Compound," to blast them out. The process required the insertion of cartridges of the compound under the stumps, and their explosion by means of a fuse and cap. Irish required assistance in his operations, and the president of the village directed the foreman in charge of the work on the park to furnish him the help he required. The foreman permitted the deceased and one Rooney to go to work with Irish, and it was only on the third day of the blasting that a premature explosion took place, by which the deceased and Rooney were killed. The explosive, known as "Van Campen's Compound," had a local reputation as a safe and efficient preparation for the purpose for which it was used. The cartridges employed by Irish were manufactured by a firm at Eldred, Pa., who had purchased the formula from the inventor, and had a license to manufacture and sell the compound; and these cartridges were sold under the name of "Van Campen's Compound." Mr. Van Campen, the inventor, naturally jealous of the reputation of his compound for safety, examined one of the same stock of cartridges some time after the accident, and expressed the opinion that its contents were not compounded in all respects like the genuine Van Campen's compound. His evidence is not very satisfactory on that question, but it is of no materiality on the question of the defendant's negligence. It is undisputed that the cartridges in question were manufactured and sold as Van Campen's compound by the people who for several years had been the accredited manufacturers of that article; and, if they had ceased to manufacture according to the original formula,

there is no pretense that the president of the defendant knew, or had any reason to suppose, that they had made any change in the composition of the product which was sold under the same name. It is impossible to charge the defendant with negligence on account of any such change, if it had in fact been made. Indeed, we are unable to find evidence in the case which charges the defendant with negligence in any respect. There was, no doubt, a measure of hazard involved in the use of an explosive for the purpose of removing stumps; but it was a hazard incident to the process, and was as well known, so far as appears, to the deceased, as to the president of the village. It was therefore a hazard assumed by the deceased himself. Burke v. Witherbee, 98 N. Y. 562; Webber v. Piper, 109 N. Y. 496, 17 N. E. Rep. 216; Cullen v. Norton, 126 N. Y. 1, 26 N. E. Rep. 905. Moreover, it is to be observed that the deceased was not required to assist in the work in which the hazard was involved, but that he was virtually a volunteer. Bannister, the foreman, testifies that, when the president of the village directed him to furnish Irish what help he needed, Rooney, who was present, said, "That will be a job for Tom [Prentice] and me," to which no objection was made; and that when Irish went to work, in the absence of the foreman, Rooney and Prentice went to work with him. But even if he had been directed to go to work at the blasting, and even on pain of losing his employment, he would have had the option to do the latter; and, if he did the former, it would have been at his own risk of the hazards which were incident to the employment, and were as well known to him as to his employer. The evidence shows that the president of the village had every reason to suppose that the explosive to be employed was a well-known compound, highly recommended and approved, both by scientific analysis and by long use, for safety in its use. There was no evidence of negligence on his part in failing to discover, if such was the fact, that the compound was not precisely what it purported to be. All other risks than that were incident to the employment in which the deceased voluntarily engaged, and, so far as they related to him, were assumed by himself. There seems to have been no evidence which would have supported a verdict for the plaintiff, and therefore the nonsuit was properly granted.