ALMIRA M. DANA, as Administratrix, etc., of HERBERT G. DANA, Deceased, Appellant, *v.* THE CROWN POINT IRON COMPANY, Respondent.

*Master and servant — negligence — injury to a servant through the unexplained movement of machinery — suitable appliance — intervention of human agency.*

A workman, employed at a blast furnace, was killed while cleaning the hot-blast oven, in the course of his duties, through the unexplained moving of a lever which regulated the passage of the blast, and no positive act of negligence on the part of the employer was shown:

*Held*, that, as it appeared that the machine was suitable for the purpose for which it was constructed, and was reasonably safe to operate, and the manner of operating it, including the handling of the lever, were matters of detail necessarily resting upon the care, intelligence and fidelity of the employees, and it was not claimed that the fellow-workmen of the deceased were not fit and competent men, a nonsuit was properly granted, in an action by the representative of the deceased against the employer, for negligence.

It was claimed by the plaintiff in such action that all danger of the lever's moving could have been avoided by some additional appliance.

*Held*, that the employer was not negligent in that regard, since he was not bound to provide the best known or conceivable appliances; and even the appliance suggested would not insure the safety of the workmen, as human agency would still be required for its operation.

APPEAL by the plaintiff, Almira M. Dana, as administratrix, etc., of Herbert G. Dana, deceased, from a judgment of the Supreme Court, entered in the office of the clerk of Essex county on the 28th day of December, 1891, in favor of the defendant for costs, on a nonsuit ordered at the Essex Circuit; and from an order denying a motion for a new trial, made on the minutes of the court, in an action to recover damages for the death of the plaintiff's intestate, through the alleged negligence of the defendant, his employer, in failing to make safe the place in which the deceased was employed.

*Wallace T. Foote, Jr.,* and *Charles S. Foote,* for the appellant.

*Richard L. Hand,* for the respondent.

HERRICK, J.:

The defendant is a corporation owning and operating a blast furnace; as a part of this furnace, used for the purpose of heating the draft of air forced into it, called the blast, is a stove, or oven so

called. This stove or oven is a large stack or chimney of iron, some seventy feet high and sixteen feet in diameter, divided into four apartments; the largest apartment is occupied from top to bottom with a large number of small fire brick flues or chimneys without lateral connections. It is operated by conducting gas into the oven, the gas is ignited, passes up through the apartments not occupied by the fire brick flues, to the top of the flues, passes over and is drawn down through the fire brick chimneys or flues, and is drawn out or escapes by a chimney valve; by this process the fire bricks are heated to 900 or 1,000 degrees Fahrenheit; when they have been so heated the gas is shut off, what is called a blast valve opened, and air, forced by powerful engines through these heated passages in the oven, is heated by the fire brick to a temperature of from 900 to 1,000 degrees; then it is conducted through an opened blast valve into the furnace, furnishing what is called a hot blast. This blast valve is located at the bottom of the stove or oven, on its front; it works vertically across a horizontal pipe, and is raised by means of compressed air admitted into a cylinder underneath a piston directly above the blast valve, and connected with it by the piston rod and a valve stem which are joined together by a toggle joint.

The admission of air to the piston is controlled by what is called a four-way cock, that is, a cock with openings ninety degrees apart. The four-way cock is operated by a lever some fourteen inches long. When the lever is horizontal no pressure can enter above or below the piston. When the lever is depressed about forty-five degrees air is admitted under the piston and the blast valve is raised; when the lever is raised forty-five degrees air is admitted above the piston and a downward pressure is obtained, which tends to keep the blast valve closed.

There is a nut on the four-way cock which may be tightened or loosened; tightening the nut increases the friction or difficulty in moving the lever, and it is intended to be used for that purpose. The men in charge of the furnace control the ease or difficulty of moving the lever by the use of this nut. This nut would naturally tend to work loose. The evidence shows that a month or six weeks before the accident this nut was tightened up, complaint was made that it was too tight, but no change was made. I cannot find anything in the evidence as to its condition at the time of the accident.

At the time of the accident there was a small copper wire fastened by one end above the lever to what is called a pressure pipe, it was then conducted around the lever by a single turn and left hanging free, it had a tendency to hold the lever up in its horizontal position.

This wire seems to have been placed there by some of the men in charge of the furnace; it was not a part of the original construction of the machine. The nut when properly tightened would keep the lever in a horizontal position, unless some force was applied to it to move it either up or down.

There is a pathway in front of the oven, and three or four feet distant from it; there is nothing to prevent a person using the path from using or meddling with the lever. The pathway is used by the workmen to go around the ovens and to go to and from the different buildings of the defendant. Dust settles in the oven and it has to be cleaned at periods of from two to three months, and for that purpose there is a man-hole opening into the oven by means of which a person may enter and clean it.

The furnace in question, with its appliances, was put up in 1881; it is similar in construction to those used in some seventeen other places, and, so far as appears, is reasonably safe in construction and suitable for the purpose for which it is constructed. No accident of the kind in question appears ever to have happened before with any of the furnaces. The oven of defendant's furnace had not been cleaned out for about three months, when, on the 12th day of October, 1889, the plaintiff's intestate, Herbert Dana, entered the oven through the man-hole to clean it out; he had been in there but a very short time when the attention of other workmen was called to the sound of wind, and dirt blowing out of the oven, and the cries of Dana to help him out; he was dragged out of the oven, his clothes burned off of him, and his body a charred and blackened mass. It was noticed, half or three-quarters of an hour afterwards, that the lever instead of being horizontal was down, so that the hot blast had been turned on; the wire was still around the lever, but had apparently slipped along it. There is nothing in the case to indicate what caused the moving of the lever and the consequent turning on of the hot-air blast; whether fellow-workmen or strangers tampered with it, or how it occurred.

There are only the naked facts that the man went into the oven, the hot-air blast was turned on, and shortly afterward it was discovered that the lever was down. Everything else is guess-work and surmise.

No positive act of negligence on the part of the defendant is shown. Neither do I see that there is anything that it omitted to do that the law required it to do. It furnished a good machine, reasonably safe to operate.

The manner of operating it, the turning on and off of the blast, the cleaning of the oven, the handling of the lever, were all matters of detail, which must necessarily be looked after by its employees, and rested upon their care, intelligence and fidelity. (*Cullen* v. *Norton*, 126 N. Y., 1; *Filbert* v. *D. and H. C. Co.*, 121 id., 207.)

There is no claim here, as I understand it, that the fellow workmen of the deceased were not fit and competent men.

It is said, however, that all danger of the lever going down could have been avoided by taking it off, by providing a lock for it, or a catch, or hasp. True, but the defendant is not bound to provide the best known or conceivable appliances. (*Burke* v. *Witherbee*, 98 N. Y., 562.) But even the appliances suggested would not insure the safety of the men employed; human agency would still have to be used to remove the lever, to lock or unlock the lock, to arrange the catch or hasp; carelessness or negligence of fellow workmen or the interference of strangers would render useless such appliances. In this case it appears that the proper tightening of the nut provided for that purpose would prevent the movement of the lever, unless it was tampered or interfered with; the same causes that would render the suggested precautions ineffectual would, possibly, have rendered the one provided by the defendant useless.

I can see no error committed upon the trial sufficient to call for a new trial.

The judgment should be affirmed, with costs.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment affirmed. with costs.