(9 Misc. Rep. 394.)

### DALEY v. UNION DRY-DOCK CO.

(Superior Court of Buffalo, General Term.   July 5, 1894.)

MASTER AND SERVANT—DEFECTIVE APPLIANCES.

Where a servant is injured while using appliances which had become defective from long use, but the evidence is conflicting as to whether they ever before failed to work properly, the rule that where appliances have been used for a long time, and have uniformly answered their purpose without accident, they may be continued to be used without the imputation of negligence, does not apply.

Appeal from trial term.

Action by Daniel Daley against the Union Dry-Dock Company. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, made on the minutes of the court, defendant appeals. Affirmed.

Argued before TITUS, C. J., and WHITE, J.

Sprague, Morey, Sprague & Brownell, for appellant.

Tabor, Sheehan, Cunneen & Coatsworth, for respondent.

TITUS, C. J.   The defendant appeals from a judgment in favor of the plaintiff, entered upon the verdict of a jury, for $2,446.89, and from an order denying the defendant's motion for a new trial on the minutes of the judge.   The plaintiff was employed as a laborer by the defendant in its yards on Genesee street, in this city, and in common with other laborers, who are engaged in removing steel plates to be placed upon vessels.   They were in charge of a foreman, who directed their work.   At the time of the accident, they were hoisting one of these plates from the track to get it onto a truck, when it would be moved by a running block and pulley to the place where it was to be used on the vessel.   These plates or sheets were from eight to twelve feet long, two to four feet wide, and about three-fourths of an inch thick.   A tool or clamp, called a "dog," was placed over the edge of the plate, midway from the ends, and fastened with a set screw, the end of which was screwed up against the plate.   It was tapered down to a blunt point, with a concave depression in the end, so that it left a sharp round rim or ring, which, when screwed up against the plate, would press into the side of it, and make it fast.   According to the plaintiff's witnesses, this tool had been used some years, and the point or sharp edge of the rim had been worn off, leaving a flat, smooth surface, projecting further on one side than on the other.   The screw had on occasions before this failed to do its work, letting the plate slip from the dog and fall.   The plaintiff had been employed at this work but two days before the accident, and had no knowledge of the worn condition of the screw in the dog, or of the fact that it had before failed to do its work.   There is no evidence that the tool had been inspected by the defendant to ascertain its condition or need of repairs, nor were any repairs made on it until after this accident.   After the plate had been raised by the pulley, and the men were pushing it along towards the vessel, the plaintiff

having hold of it to keep it steady, with one hand on the lower edge and the other on the side, it slipped from the dog, and dropped to the platform, pulling the plaintiff down with, it, and cutting off his fingers. This plate weighed from 1,000 to 1,200 pounds. In fastening the screw, a lever about two feet long was used, and, when it was in good condition, a boy could screw it up tight enough to hold. One of the men who had been engaged in this work for some time says he set the screw on this occasion, and tightened it up as hard as he could, but as they were moving the pulley along, it jarred against one of the sheets, and dropped out of the dog. There is no question but what the dog was a proper tool for the purpose for which it was used, but it is claimed that the accident occurred by reason of allowing the screw to get out of repair, so that it did not properly and safely do the work for which it was designed. One of the witnesses testifies that a few weeks before this, while the foreman was there, the plate slipped and fell. "The end of the screw was so dull that on the edge it was partly worn, with the exception of one little piece that was left from the pressure of the plate was a little higher than the other, that it was worn down as low as the end of the depression in the tool, except one little place." Other witnesses testify that the screw had been worn down and was dull. That the screw was dull and worn is not disputed by the defendant's witnesses, but there is a conflict in the evidence about whether this dog and screw had ever before failed to do its work, the defendant's witnesses saying they never knew of an accident of that kind to happen. This presented a fair question of fact for the jury to pass upon, and we think the evidence warrants the conclusion reached by them.

This case, then, is taken out of the rule laid down in some of the cases that the fact of the long use of an appliance on countless occasions, which uniformly answered its purpose, without accident, may be continued without the imputation of negligence or carelessness. Burke v. Witherbee, 98 N. Y. 562; Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56; Stringham v. Hilton, 111 N. Y. 188, 18 N. E. 870. It is claimed by the plaintiff, from this evidence, that because the screw was worn on the end, one side more than the other, when it was screwed up against the plate the longest point only would indent the plate, so that, in a horizontal position from the center of the plate, the weight of the plate upon the screw would, if it happened to be on one side, tend to tighten the screw, and, if on the other side, loosen it, and turn the screw backward, and allow the plate to fall out. We think at least the question of the defective condition of the screw was a proper subject for the jury to pass upon. The court properly explained to the jury the duty of the master in supplying suitable and proper appliances for the use of the servant; saying, in substance, that the master was not bound to furnish the best implements known, or those of superior design, but only a tool reasonably safe for the purpose designed, and to exercise a reasonable degree of care in keeping it in repair, and, when that is done, the servant accepts the risk, and the master is discharged from all liability. This was the

question submitted to the jury, and, in doing so, we do not think error was committed by the court.

The only other question necessary to consider is the exception of the defendant "to the charge that the plaintiff's testimony that he had not seen or examined the dog is material upon the question of the defendant's negligence. I ask the court to charge that that fact is not a material fact upon the question of the defendant's negligence." The exception and request were misleading, to say the least, as the court had not charged any such proposition in connection with the defendant's negligence. At folio 172, in speaking of the plaintiff's negligence, the court said:

"The work was not complicated. It required but little skill and, as appears, it was performed by an ordinary laborer. He had never seen the dog employed before. There is no evidence that he had any opportunity or that there was any occasion for him to examine, or that he did examine it, in the course of his employment, or that he had ever been requested to do so."

This was said while the court was speaking of the facts bearing upon the plaintiff's negligence. The court then proceeded to charge the jury upon the law of the defendant's negligence, and, after fully instructing them upon that question, proceeded as follows:

"The other question for you to determine is, if the dog was there open for inspection, so that the plaintiff could have seen it, so that, when it was attempted to be fastened to this plate, he could have observed, by the exercise of ordinary care in connection with the performance of his duties, that the tool was defective, and had sufficient knowledge to be able to comprehend the fact, and in this instance he permitted the use of the tool—consented to the use of it—in that condition, he would be responsible for the use of it, and could not call upon the defendant to recompense him for damages. As bearing upon that proposition, you will take into consideration the length of time he had been at work there and the opportunity he had of examining this dog. His testimony is 'that he had never seen it before; that it had never been called to his attention.'"

All this was said in connection with the question of the plaintiff's assumption of the risk. If there was a defect in the tool, and if the plaintiff had reasonable opportunity for knowing it, he assumed the risk, and could not recover against the defendant for the injury. Nowhere in the charge is the plaintiff's lack of familiarity with the dog spoken of as material upon the question of the defendant's negligence. Counsel for the defendant was laboring under a misapprehension as to the connection in which this language was used, and the court evidently understood his request as bearing upon the plaintiff's negligence, as in that connection only was the language used, for he had fully and at length called the attention of the jury to this testimony, not in connection with or as bearing upon the defendant's negligence, but as a fact which, if true, deprived the plaintiff of his right to recover. We think, in view of what was said in the charge and the theory upon which the case was tried by both parties, that it must have been understood by the jury as the court had already charged, and evidently so understood the request to mean.

The only claim of negligence of the defendant which is supported by the evidence was that the dog and screw had got out of repair,.

and that the defendant had not taken the proper precaution to inspect it, and ascertain its defective condition, and repair it, but allowed it to remain in that condition for a long time; and the question of the plaintiff's knowledge of the condition was not material as bearing upon the question of the defendant's negligence, and had no relevancy to it, and the refusal of the court to charge was upon an irrelevant and immaterial matter. The case was not tried upon any such theory, and no claim had been made up to that time by the plaintiff or by the charge of the court that the plaintiff's knowledge of the condition of the dog had anything to do with the question of the defendant's negligence. The case was, so far as the defendant's liability is concerned, fairly and favorably, at least to the defendant, submitted to the jury by the court, in the charge; and we think no error was committed. Kissenger v. Railroad Co., 56 N. Y. 538. This disposes of the questions raised by the counsel for the defendant in his brief; and, if the conclusion reached is correct, the judgment should be affirmed, with costs.