Walter A. Whitney, Respondent, *v.* Queen City Ice Company, Appellant.

*Negligence — injury to an employee crossing a conveyer in an icehouse and slipping between the slats of the platform — a defective clutch preventing the immediate stopping of the conveyer.*

In an action brought to recover damages for personal injuries, it appeared that a conveyer, which extended almost the entire length of the defendant's icehouse, consisted of a platform made of slats, over which cakes of ice were dragged by means of lags fastened at intervals of six feet to endless chains located on each side of the platform; that the plaintiff, who was the general manager and superintendent in charge of the icehouse, in attempting to cross the conveyer, stepped upon the platform while the chains were moving, slipped through the slats and that his leg came in contact with one of the lags and was broken before the conveyer could be stopped.

There was evidence that the chains did not move any faster than a man would ordinarily walk, and that the method of crossing the conveyer employed by the plaintiff was universally adopted by all the defendant's workmen with the

knowledge and approval of its president. It further appeared that the moment the plaintiff caught his foot between the slats the engineer was notified to stop the machinery, and there was evidence tending to show that his inability to do so in time to avoid the accident resulted from the defective condition of a clutch which the defendant's president had directed to be used notwithstanding its dangerous condition.

*Held,* that a judgment entered upon a verdict in favor of the plaintiff should be affirmed;

That, under the circumstances, the question of the plaintiff's contributory negligence was one of fact for the jury.

McLENNAN, J., dissented.

APPEAL by the defendant, the Queen City Ice Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chautauqua on the 12th day of May, 1899, upon the verdict of a jury rendered after a trial at the Chautauqua Trial Term, and also from an order entered in said clerk's office on the 2d day of June, 1899, denying the defendant's motion for a new trial made upon the minutes.

In February, 1898, the defendant was the owner of and engaged in operating a plant for the storage of ice at Cassadaga lake in the county of Chautauqua. The plaintiff was the defendant's general manager and as such superintended the storage of ice in a building used for that purpose.

This building was about 180 feet in length and 150 feet in width; at one end blocks of ice were carried on an incline to the upper portion of the house where they were switched off on to a conveyer which ran through the center of the building and extended from one end to the other. Both the elevator and conveyer were adjustable, so that the height of the latter could be kept a few feet above the level of the ice in the several compartments. As the ice came upon the conveyer it was moved along by lags which were fastened at either end to an endless chain at intervals of six feet, the lags being about four inches square. The chains which secured the ends of the lags passed over a sprocket wheel at the south end of the building, and that sprocket wheel was set in motion by the revolution of a shaft in the tower above, from which shaft a chain came down to the sprocket which engaged the chains upon the moving lags. The chain and the lags moved within eight feet of the whole distance of 180 feet, and passed over the north end of the conveyer to the

bottom thereof and ran along through the bottom in the same manner that they moved upon the top. By the revolution of the sprocket it engaged the chain to which the lags were fastened, drawing them towards the sprocket along the bottom of the conveyer, which necessarily moved the lags along on the top in the opposite direction until they passed over the end of the conveyer at the north end of the building. As the apparatus was put in motion the cakes of ice were delivered from the elevator into the spaces between the lags of the conveyer and were by the lags pushed along until they were drawn into the different rooms by men who were stationed upon either side of the conveyer for that purpose.

On the 16th day of February, 1898, while the plaintiff was engaged in this work, he went upon the conveyer and, slipping through between the slats over which the conveyer ran, his leg came in contact with one of the lags and was drawn along some distance until it came in contact with the crosspiece which supported the slats, when, being unable to move farther, it was broken, and his boot coming off, his leg came out from between the slats after it was injured and he was moved along and left beyond the point where he came in contact with the slat, when the conveyer was stopped.

*George Clinton*, for the appellant.

*Elton D. Warner*, for the respondent.

Adams, P. J.:

This action is brought by the plaintiff to recover damages for the personal injuries sustained by him under the circumstances above detailed, his contention being that the accident which caused such injuries was attributable to the negligence of the defendant in permitting the clutch which operated and controlled the movement of the conveyer to become so worn and defective as to make it difficult, if not impossible, for the person in charge thereof to stop the conveyer in time to avoid the accident.

That this clutch was broken and out of order is a fact about which there was no controversy; and it was likewise undisputed that the defendant's president and manager, with full knowledge of the situation, directed that the clutch should be used in its broken

condition and to that end improvised a temporary appliance for controlling the operation of the defective machine, and instructed the person in charge of it how to use the same.

The plaintiff testified that he was unaware of the defective condition of the clutch, and there was evidence to support the contention that but for its defective condition the accident would not have occurred. It follows, therefore, that the defendant's negligence was fairly established.

We do not understand that this proposition is seriously controverted, but it is insisted that, even conceding the defendant's negligence, the plaintiff ought not to be permitted to retain the verdict which was rendered in his favor, because of his own contributory negligence; and at first blush there would seem to be much force in this contention, for it is not denied that the plaintiff stepped on to this conveyer while it was in motion, and with full knowledge of the consequences which were liable to ensue in case his leg became caught between the slats; but, upon the other hand, it was made to appear by evidence which was virtually undisputed that the plaintiff's duties required that he should frequently go from one side of the conveyer to the other, and that to accomplish such change of position there were but three ways available, viz.: He might have gone to the farther end of the building and passed around the conveyer, but this would have involved an expenditure of time and energy which the defendant's president frankly declared would not have been tolerated; he might have crawled under the conveyer and taken the chance of his head coming in contact with the endless chain as it moved along on its return, provided the space between the conveyer and the floor was not filled with refuse ice, as it generally was after ten or eleven o'clock in the forenoon; or he might have stepped across the slowly-moving conveyer, as he attempted to do, and as he had frequently done before with perfect safety.

Widely differing estimates were furnished by the various witnesses as to the rate of speed at which the conveyer was moving at the time of the accident; but from the conflicting evidence the jury would have been justified in assuming that its speed was not more rapid than that at which a man would ordinarily walk, and the plaintiff testified that, measuring its movement with his eye, he was

careful to step immediately behind one of the lags so as to obtain all the space and time available.

The conveyer always moved at about the same rate of speed, and the evidence tended to show that it was the universal custom for the workmen in the icehouse to cross from one side of the house to the other by stepping upon the conveyer while it was in motion; that this was done with the knowledge of the defendant's president and manager; that he had been seen to do it himself, and on one or more occasions had found fault with certain of his employees because they hesitated to do the same thing. It was also made to appear that there was a bell in the power room to which a cord was attached; that a man was stationed near the conveyer, whose duty it was to ring this bell whenever there was any occasion for stopping the machinery, and that if the clutch had been in order the engineer, upon being warned by the ringing of the bell, could have stopped the conveyer almost instantaneously. It also appears that the moment the plaintiff caught his foot between the slats, the bell was rung and an effort made to shut off the power, but that this effort proved futile, in consequence, as it is claimed, of the defective condition of the clutch. These circumstances have a tendency, as we think, to very materially weaken the force of the defendant's contention, and to convert the question of the plaintiff's contributory negligence into one of fact for the jury.

The general rule which must govern in cases of this character is, of course, well understood; and it is not difficult to cite authorities without number which seem to support the defendant's contention that the question we are now considering is one of law and not of fact; but we think it will be found upon examination that the application of this rule is invariably dependent upon the peculiar circumstances of each individual case. The correctness of this assertion finds illustration in one of the cases to which our attention has been directed, viz., *Bajus* v. *S., B. & N. Y. R. R. Co.* (103 N. Y. 312). There the plaintiff was a brakeman, and while attempting to uncouple some cars he caught his foot under a brake beam, and, after being dragged for a long distance, one of his legs was crushed under the wheel of a car. It appeared that the shifting engine which was attached to the cars was out of order, and there was

some evidence tending to show that if it had been in a proper state of repair the backward motion of the cars might have been arrested in time to have avoided the accident; but it was held that this fact, in view of the circumstances of the case, did not establish actionable negligence upon the part of the plaintiff. As thus stated, there certainly does appear to be some analogy between the facts of this case and those of the one under consideration; but when we come to fully understand the reason upon which the court rested its conclusion, we find that there is a radical difference between the two cases; for, in discussing the facts of the case cited, it was said by EARL, J., that "this was not a dangerous engine, and it did not cause the injury. * * * It was an accident which the defendant had no reason to anticipate, and, hence, it was not bound to have an engine there adequate to avert its consequences. It cannot be charged with negligence, in not foreseeing that such an accident might occur, and that then the engine would lack power to stop suddenly enough to ward off injury."

In the present case it clearly appears that the defendant's president and manager well knew that the defective machinery was dangerous, and he also knew that by reason of its dangerous and defective condition it was exceedingly difficult of management and control. The matter was talked over between him and Orcutt, the engineer, a few hours prior to the accident, and yet with this knowledge he instructed Orcutt to use the improvised bar and get along as best he could until a new clutch could be adjusted. Moreover, it appears that the defendant had constant reason to anticipate some accident to or disarrangement of the conveyer, for two men were stationed in close proximity to the bell cord, whose duty it was to signal the engineer to stop the machinery the instant any difficulty arose, and if this precaution was necessary when the clutch was in working order, there was all the more reason to anticipate trouble when its power and effectiveness were impaired.

The case, after a careful trial, was submitted to the jury in a charge which was exceptionally clear and impartial, and while conscious that it presses the border line quite closely, we are not persuaded that the verdict of the jury ought to be disturbed.

All concurred, except McLENNAN, J., dissenting in an opinion.

McLENNAN, J. (dissenting):

The plaintiff was engaged in pulling cakes of ice from a raised platform, the bottom of which was made of stringers a few inches apart, and along which the ice was being pushed by slats attached to an endless chain passing above and below the platform, and propelled by an engine. The plaintiff, while engaged in this work, attempted to walk across the platform to go to the other side of the building. In doing so he stepped between the stringers of the platform, and one of the slats attached to the endless chain caught his leg, pushed it along a distance not to exceed six feet, where it came in contact with a crosspiece on the platform, and the leg was very seriously injured.

The evidence is uncontradicted that the plaintiff knew the exact construction of the platform; all the dangers about it were apparent, and it seems to me clear that when he attempted to cross he assumed the risk of slipping and stepping between the stringers of the platform. It is said, however, that if the machinery which moved the chain had been in proper repair (which, concededly, it was not) it could have been stopped, and probably would have been stopped before the moving slats had gone the distance of six feet, and thus the injury to the plaintiff's leg would have been prevented. This suggestion involves the proposition that a co-employee stationed at the extreme end of the platform would have discovered that the plaintiff's foot had gone through the platform; would have given a signal to stop to a co-employee in charge of the machinery, and stationed on the upper floor of the building; that such co-employee would have understood the signal, and would have stopped the machinery; all within about three seconds of time. In no other way could the accident have been avoided after the plaintiff's foot had gone through the platform.

We think that in attempting to cross the platform the plaintiff not only assumed the risk of falling through, but that he also assumed the risk of failure on the part of the co-employees to do all the things necessary to stop the machinery within that short space of time.

It seems to me that it is established by the evidence as clearly as it is possible to establish any fact that, even if the machinery had been in perfect order, the plaintiff's foot having slipped through

the platform, he would have sustained the injury which he did. The plaintiff took the risk of falling through the platform and of the attendant consequences. The cause of the injury was falling through the platform, for which concededly the defendant was not liable; but that having occurred, the injury was unavoidable.

If the machinery had been originally construed so that the endless chain could not have been stopped in less than thirty seconds, instead of being so constructed that it could be stopped in three seconds, clearly the defendant would not have been liable. (*Burke* v. *Witherbee,* 98 N. Y. 562; *Marsh* v. *Chickering,* 101 id. 396; *Bajus* v. *S., B. & N. Y. R. R. Co.,* 103 id. 312.)

In the *Bajus Case* (*supra*) the complaint was that the defendant's engine was so out of repair that it could not be stopped as quickly as if it had been in good repair, and that the plaintiff, having been caught upon the track, was run over because of its defective condition. It was held in that case that the plaintiff could not recover, because the defendant was under no obligation to furnish an engine of sufficient power to stop within a certain distance, and that it was entirely immaterial whether the engine as originally constructed lacked such power, or was without such power because of defects which afterwards existed. In that case, except for the defects in the engine, it could have been stopped before it ran upon the plaintiff; because of the defects it could not be stopped as quickly, and the plaintiff was injured, but it was held that no recovery could be had.

In the case at bar, even if we assume that with the machinery as originally constructed the endless chain could have been stopped before the plaintiff's leg was shoved along the distance of six feet, and before it struck the crossbeam of the platform, and that by reason of the defect in the machinery it could not be stopped quickly enough to prevent such injury, we think under the authorities cited the plaintiff was not entitled to recover. There is no evidence tending to show that the plaintiff attempted to cross the platform relying upon the fact that the machinery would be stopped within a particular time in case he fell. The arrangement to give the signals to stop was not made for that purpose; it was not to prevent accidents of the character which caused plaintiff's injury that the appliance to stop the machinery was constructed. Such an accident could not have been anticipated.

It would be quite as reasonable to hold a manufacturer liable in case an employee was injured upon a revolving shaft, because he failed to make provision for stopping the shaft instantly, if that could be done, as to hold the defendant liable in this case.

In an action of this character the evidence must fairly show negligence on the part of the defendant as the sole cause of the accident. (*Weston* v. *City of Troy*, 139 N. Y. 281; *Laidlaw* v. *Sage*, 158 id. 94.)

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide event.

Judgment and order affirmed, with costs.