JOHN LOFTUS, Administrator, etc., Appellant, *v.* THE UNION FERRY COMPANY OF BROOKLYN, Respondent.

While a ferry company is bound to use the strictest diligence in providing suitable and safe accommodation for landing passengers from its boats, it is not bound to so provide against any possibility of danger that they can meet with no casualty.

Defendant landed passengers from its ferry boats by means of a float or bridge, between each side of which and the adjoining pier was a space of from eight to twelve inches, left for the movement of the bridge under the action of the tide and the impact of the boats on entering the slip. On each side was a guard, with a sill along the outer line of the passage-way rising six or eight inches from the floor of the bridge which was spanned by an arched rail, at the center about three feet above the sill, supported by stanchions in the sill about six feet apart. Between the sill and this rail was another rail twenty or twenty-two inches above and parallel with the sill. Plaintiff's intestate, a child six years old, while leaving one of defendant's boats, in passing over this bridge, fell through one of the openings in the guard into the water and was drowned. In an action to recover damages it appeared that the bridge had been constructed five or six years before the accident and was similar to bridges at other ferries of the defendant over which millions of people passed annually and no similar accident had previously happened. *Held,* that defendant was not chargeable with any actionable negligence; and that a verdict for plaintiff was properly set aside.

(Argued February 28, 1881; decided March 8, 1881.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, made September 14, 1880, which reversed an order denying a motion for a new trial and granted a new trial. (Reported below, 22 Hun, 33.)

This action was brought to recover damages for alleged negligence causing the death of James M. Loftus, plaintiff's intestate.

The facts are set forth sufficiently in the opinion.

*Charles J. Patterson* for appellant. He who has what is more than ordinarily dangerous must use more than ordinary care to prevent injury to others thereby. (1 Thompson on Negligence, 238; *Morgan* v. *Cox*, 22 Miss. 373; *Castle* v. *Duryea*, 2 Keyes, 169.) The fact that the opening was adjacent to the passage-way, and that it was concealed from the view of a person thereon, imposed upon defendant the duty of additional caution. (*Totten* v. *Phipps*, 52 N. Y. 354; *Pickard* v. *Smith*, 100 C. L. [10 C. B. N. S.] 470; *Chapman* v. *Rothwell*, 96 id. [El., Bl. & El.] 168; *Johnson* v. *Bruner*, 61 Penn. St. 58; *Indermauer* v. *Dames*, L. R., 1 C. P. 274; *S. C.* affirmed, L. R., 2 C. P. 311; *Chicago* v. *Major*, 18 Ill. 338; *Radway* v. *Briggs*, 37 N. Y. 256.) Persons maintaining openings adjacent to or upon traveled ways are held absolutely responsible for all injuries caused thereby to others using care. (*Barnes* v. *Ward*, 6 Man., Gr. & Scott, 392; 9 C. B., E. C. L. 418; 14 Jurist, 434; *Copland* v. *Hardigham*, 3 Campb. 398; *Jarvis* v. *Dean*, 3 Bing. [11 E. C. L.] 447; *S. C.* affirmed, 11 J. B. Moore [22 E. C. L.], 354; *Beck* v. *Carter*, 68 N. Y. 283; *Temperance Hall* v. *Giles*, 33 N. J. Law, 260; *Sexton* v. *Zett*, 44 N. Y. 430; *Hulbert* v. *N. Y. C. R. R.*, 40 id. 145.) The fact that many little children were among the great numbers who thronged the passage was reason for providing better protection. Increased care is always due from a carrier to a young child. (*Sheridan* v. *B. & N. R. R.*, 36 N. Y. 39; *Smith* v. *Wilson*, 31 How. 272; 2 Wait's Act. and Def. 96; *Hazman Case*, 50 N. Y. 60; 79 id. 469; *N. J. R. R.* v. *Palmer*, 33 N. J. Law, 93.) The duty of extraordinary care also resulted from the defendant's relation as common carrier of passengers. (*Payne* v. *Gt. North. R. R.*, 2 Foster & Fin. 619; *Withers* v. *N. K. R. R.* 27 L. J. [Exch.] 417; *Bird* v. *Gt. North. R. R.*, 28 id. 417;

*Richardson* v. *Gt. E. R. R.*, L. R., 10 C. P. 490; *Knight* v. *Portland S. & P. R. R.* 56 Me. 234; *Weston* v. *N. Y. E. R. R.*, 73 N. Y. 595; 38 Mich. 517.) Defendant was bound to provide a safe landing. (*Hoffman* v. *N. Y. C. R. R.*, 75 N. Y. 605; *Weston* v. *N. Y. El. R. R.*, 73 id. 595.) Defendant was bound to provide all protection against this danger which would suggest itself to a very careful person having his mind bent upon protecting young children from falling into the opening. (Abb. Trial Evidence, 591; *Bevier* v. *D. & H. C. Co.*, 13 Hun, 254.) The question as to the sufficiency of the hog frame as a guard is, upon its face, a question of fact. (*Stackus' Case*, 79 N. Y. 464; *Weber's Case*, 58 id. 451; *Ernst's Case*, 35 id. 9; *Leishman* v. *L. B. & S. C. R'way*, 23 L. T. [N. S.] 712; Fisher's Ann. Dig. 1871, p. 242; *D. L. & W. R. R.* v. *Napley*, 90 Penn. St. 135.)

Whether the defendant had performed its obligation to guard the opening with such care as it was bound to exercise, was a question of fact for the jury. (*Camp* v. *Wood*, 76 N. Y. 92; *Hulbert* v. *N. Y. C. R. R.*, 40 id. 145; *Stratton* v. *Staples*, 59 Me. 94; *Brockway* v. *Lascalla*, 1 Edm. 138; *Simson* v. *L. G. O. Co.*, L. R., 8 C. P. 390; *Lax* v. *Darlington*, L. R., 5 Exch. 28; *Nicholson* v. *L. & Y. R. R.*, 3 Hurlst. & C. 533; *Longmore's Case*, 19 C. B. [N. S.] 183; *Martin* v. *G. N. R. R.*, 16 C. B. 179.) Defendant was obliged not only to use its own best skill and judgment to protect its passengers, but it was bound to avail itself of the skill of others and provide the best guard that was in practical use anywhere. (*Caldwell* v. *N. J. S. Co.*, 47 N. Y. 282; *Steinweg* v. *Erie R. R.*, 43 id. 126; *Bevier* v. *D. & H. C. Co.*, 13 Hun, 258; *Unger* v. *Forty-second Street R. R.*, 51 N. Y. 497.) Defendant was bound to use the utmost diligence to maintain order among its passengers and prevent injury to one by another. (*Putnam* v. *Broadway R. R.*, 55 N. Y. 108; *Flint* v. *Nor. & T. Y. T. Co.*, 34 Conn. 554; *Pittsbg. R. R.* v. *Hinds*, 53 Penn. St. 512; *Same* v. *Pillow*, 76 id. 510; *N. O. R. R.* v. *Burke*, 53 Miss. 200; *Holly* v. *Atlanta St. R. R.*, 7 Ga. 460; *Goddard* v. *Gt. T. R. R.*, 57 Me.

202; *Hendricks* v. *Sixth Ave. R. R.*, 12 J. & S. 8; Leading article, 10 Ont. L. J. 41.) The fact that the accident never happened before is immaterial in this case. *(Longmore's Case,* 19 C. B. [N. S.] 183; *Lewis* v. *Smith,* 107 Mass. 344; *Temperance Hall* v. *Giles,* 33 L. J., 260; *Wilson* v. *City of Syracuse,* 21 Hun, 411.) The child not having been guilty of any thing which would be negligence in an adult, the question as to whether his mother was negligent is not in the case. *(McGarry* v. *Loomis,* 63 N. Y. 105.) She had a right to assume that the defendant had made the bridge safe. *(Newson* v. *N. Y. C. R. R.*, 29 N. Y. 383; *Weed* v. *Vil. of Ballston,* 76 id. 329; *N. J. R. R.* v. *Palmer,* 33 N. J. Law, 90.) Whether it was negligence to allow the child to go in advance of her, under the circumstances, was matter of fact for the jury. *(Tetter* v. *N. Y. & Harlem,* 2 Abb. Ct. of App. Dec. 458; *Ihl* v. *Forty-second St. R. R.*, 47 N. Y. 317; *Cosgrove* v. *Ogden,* 49 id. 255; *McGarry* v. *Loomis,* 63 id. 105.)

*B. D. Silliman* for respondent. Plaintiff must affirmatively prove that there was no negligence on the part of the deceased or of the person having him in charge. *(Deyo* v. *N. Y. Cent. R. R. Co.,* 34 N. Y. 9; *Reynolds* v. *N. Y. Cent. R. R. Co.,* 58 id. 250; *Thurber* v. *Harlem, etc., R. R. Co.,* 60 id. 333; *Waite* v. *North-eastern R. R. Co.,* 5 Jur. [N. S.] 936.) Defendant was not an insurer of the safety of plaintiff's intestate, but was only bound to provide accommodations for the landing of its passengers which were reasonably safe and sufficient when used in a reasonable way. *(Rigg* v. *Manchester, etc., R. R. Co.,* 12 Jur. [N. S.] 525; *Cornman* v. *Eastern Co. R. R. Co.,* 4 H. & N. 781; *Crafter* v. *Metropolitan R. R. Co.,* L. R., 1 C. P. 300; *Blackburn* v. *London R. R. Co.,* 17 W. R. 769; *Lay* v. *Midland R'way Co.,* 30 L. T. 529; *Dugan* v. *Champlain Tr. Co.,* 56 N. Y. 1; *Cleveland* v. *N. Y. Stmbt. Co.,* 68 id. 306, 309; *Crocheron* v. *North Shore Staten Island R. R. Co.,* 56 id. 656; *Hegeman* v. *Western R. R.*, 13 id. 9; *Caldwell* v. *N. J. Stmbt. Co.,* 47 id. 282; *Crafter* v. *Metropolitan R'way Co.,* L. R., 1 C. P. 300; *Lay* v. *Mid-*

*land R'way Co.*, 30 L. T. 529 ; *Blackman* v. *London, etc., R. Co.*, 17 Wkly. Rep. 769 ; *Cornman* v. *Eastern Counties R. Co.*, 4 Hurlst. & N. 781 ; *Cleveland* v. *N. Y. Stmbt. Co.*, 68 N. Y. 806.)

Andrews, J. The charge of negligence is based solely upon the alleged insufficiency of the guard on the side of the bridge or float adjoining the passage-way for passengers going upon or leaving the ferry-boat. It is not claimed that the bridge was not in other respects properly constructed. It did not fill the entire space between the piers. On each side there was a space open to the water of from eight to twelve inches between the bridge and the adjoining pier. This space was left for the movement of the bridge caused by the tides and the impact of the boat on entering the slip. The guard was a frame of wood constructed by laying a sill lengthwise of the bridge along the outer line of the passage-way and rising six or eight inches above the floor of the bridge, and spanned by an arched rail extending from end to end, which at the center was about three feet above the sill, with stanchions in the sill about six feet apart, and intermediate the sill and the arched rail was another rail parallel with the sill and about twenty-two inches above it. This left a space in the guard above the sill six feet wide and twenty-two inches high. The bridge was constructed five or six years before the accident, and was similar to the bridges at the other ferries of the defendant. It was conceded on the trial that over forty millions of people passed annually over the defendant's ferries, and until the occurrence in question no accident had happened from any person falling or getting through the spaces in the guard. The intestate was a child six years old. On the evening of July 3, 1878, the intestate's mother with her two children (the youngest, an infant, nineteen months old), entered the defendant's ferry-boat at Brooklyn to go to New York, and on reaching the New York side of the river, after the boat had been secured and after most of the other passengers had left the boat, she started with her children to pass over the bridge. The intestate

walked in front of or near his mother, who had the other child in her arms. In some manner not clearly explained, the boy fell into or got through the opening in the guard, and falling into the water between the bridge and the pier, was drowned. The evidence perhaps justifies the inference that the child, frightened and startled by the boisterous noise and the running of two other boys who were leaving the boat, tripped or stumbled over the sill, and falling toward the pier, was precipitated into the water.

We think this case is governed by the cases of *Dougan* v. *Champlain Trans. Co.* (56 N. Y. 1), *Crocheron* v. *North Shore Staten Island Ferry Co.* (id. 656), and *Cleveland* v. *New Jersey Steamboat Co.* (68 id. 306).

The defendant was bound to provide suitable and safe accommodations for the landing of passengers. The rule of the strictest diligence in this respect is the only one consistent with a due regard to the value of human life and with the relation which the defendant assumes to the public. But the rule does not impose upon the defendant the duty of so providing for the safety of passengers, that they shall encounter no possible danger, and meet with no casualty, in the use of the appliances provided by it. It was possible for the defendant so to have constructed the guard, that such an accident as this could not have happened; and this, so far as appears, could have been done without unreasonable expense or trouble. If the defendant ought to have foreseen that such an accident might happen, or if such an accident could reasonably have been anticipated, the omission to provide against it would be actionable negligence. But the facts rebut any inference of negligence on this ground. The company had the experience of years, certifying to the sufficiency of the guard. That it was possible for a child or even a man to get through the opening was apparent enough. But that this was likely to occur was negatived by the fact that multitudes of persons had passed over the bridge without the occurrence of such a casualty. If the structure was intrinsically insecure, the fact that it had been used without in-

Statement of case.

jury before this would not exempt the company from responsibility, when an accident did happen from its defective condition. The guard was concededly sufficient for grown people. A small child might more easily get through the opening than a man, but small children are usually in charge of parents or guardians; and this is entitled to some weight in determining the question of the company's negligence. We think the exemption of the defendant in this case rests upon the fact which we think clearly appears as an inference from the other facts, that the company had no reason to apprehend an accident like this, and that the arrangements made were such as experience had, up to that time, shown to be safe and suitable, and sufficient to meet the requirements of its duty. The line which separates a pure misadventure resulting in injury, for which no one is responsible, from accidents creating responsibility, by reason of negligence, is often narrow and difficult to be drawn; but we think the casualty in this case is of the former and not of the latter class. It results from these views that the defendant was not liable, and that the verdict was properly set aside. The order of the General Term should be affirmed and judgment absolute ordered for the defendant on the stipulation.

All concur, except RAPALLO, J., absent.

Order affirmed and judgment accordingly.