ALICE LAFFLIN, Respondent, *v.* THE BUFFALO AND SOUTH-WESTERN RAILROAD COMPANY, Appellant.

Plaintiff, a passenger on defendant's road, in attempting to step from the car to the station platform missed the platform, fell between it and the car and was injured. In an action to recover damages for the injuries the following facts appeared: The distance between the platform and the car was eleven inches. The lower step of the car was eight inches below the top of the platform, and one foot seven inches distant therefrom. The second step was about four inches below the platform and two feet two inches therefrom. Plaintiff stepped from the second step without having hold of the iron railing on either side and without looking to see the station platform. The platform had been used for many years by passengers, and prior to the accident no one had been injured or had suffered any inconvenience on account of the distance between the platform and the cars. It did not appear but that the platform was constructed in the ordinary way, or that the space between it and the car was more than was requisite, and there was no complaint that the platform was out of order or improperly constructed. *Held*, the facts did not justify a verdict for plaintiff; and that a refusal to direct a verdict for defendant was error.

As a general rule where an appliance, machine or structure, not obviously dangerous, has been in daily use for years and has uniformly proved

adequate, safe and convenient, it may be continued without the imputation of negligence.

It is not the duty of a railroad company to furnish some one to aid passengers in alighting from its cars.

(Argued May 9, 1887: decided June 7, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made April 23, 1885, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

*George C. Greene* for appellant. Plaintiff was clearly guilty of contributory negligence. (*Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 47, 50; *McGrath* v. *D. & H. C. Co.*, 14 Week. Dig. 574, *Becht* v. *Corbin*, 92 N. Y. 658; *Burrows* v. *E. R. Co.*, 63 id. 556, 559; *Gavett* v. *Manchester & L. R. R. Co.*, 16 Gray, 499–507; *Ward* v. *Cent. Park R. R. Co.*, 1 J. & S. 392; *Phillips* v. *R. & S. R. R. Co.*, 49 N. Y. 177; *Lucas* v. *N. B. & T. R. R. Co.*, 6 Gray, 64; *Mackey* v. *N. Y. C R. R. Co.*, 27 Barb. 529; 2 Redf. on Ry's, 191–195; *Brooks* v. *B. & N. F. R. R. Co.*, 25 Barb. 600; 27 id. 532; *Willis* v. *L. I. R. R. Co.*, 32 id. 398–404; affirmed, 34 N. Y. 670; *Baulec* v. *N. Y. & H. R. R. R. Co.*, 59 id. 366; *Cunningham* v. *Lyness*, 22 Wis. 236; *Potter* v. *Chicago & N. Y. Ry. Co.*, 21 id. 372; 9 Am. & Eng. Ry. Cas. 264 *n.*)

*Wm. S. Oliver* for respondent. It was defendant's duty to so light its station, or landing place, where it invited passengers to alight, as to enable them to see where they were to step, to avoid danger and secure safety. (*Hulbert* v. *R. R. Co.*, 40 N. Y. 145; Wharton on Neg., §§ 654, 821; Thompson on Carriers, 108; Sher. & Redf. on Neg., §§ 276, 277, 278; Thompson on Neg., 315.) It was also its duty to hold its train from motion while its passengers were alighting. (*Tabor* v. *R. R. Co.*, 71 N. Y. 489; *Bartholemew* v. *R. R. Co.*, 102 id. 716; *Keating* v. *R. R. Co.*, 49 id. 673; Wharton, §§ 375, 366, 649; Thompson on Carriers, 227; *Cockle* v. *L. & S. E.*

*R. Co.*, 7 C. P. 321; *Praeger* v. *R. R. Co.*, 24 L. T. R. [N. S.] 105; *Foy* v. *R. Co.*, 18 C. B. R. [N. S.] 225; C. L. R., 114.) At night-time depots should be lighted, or other proper means taken so as to enable passengers safely to reach the place of entrance or exit. (Wharton on Neg., § 654; 48 Vt. 10, 32 Wis. 524; 36 id. 410.) A passenger has the right to assume that the company has performed its duty, and that the platform is safe. His going upon it in order to reach the cars is not, therefore, of itself, contributory negligence. (*Ferris* v. *Union F. Co.*, 36 N. Y. 312; *Hulbert* v *R. R. Co.*, 40 id. 145, 151; *Weston* v. *R. R. Co.*, 73 id. 595, *McGuir* v. *Spence*, 91 id. 303.) Evidence of the size of defendant's ordinary cars was competent and proper evidence to be considered by the jury in determining whether the space between the steps of the defendant's cars and the station platform was too great for safety. (*Sheldon* v. *R. R. Co.*, 14 N. Y. 218; *Field* v. *R. R. Co.*, 32 id. 339, *Crist* v *R. R. Co.*, 58 id. 638; *A. M. Co.* v. *Kessler*, 66 id. 637; *Titus* v. *Ins. Co.*, 81 id. 410–420; *Hunt* v. *Maybee*, 7 id. 266–273.)

EARL, J This action was brought to recover damages for injuries sustained by the plaintiff in alighting from one of the defendant's cars, and the circumstances of the accident are as follows: The train in which she was a passenger reached the station at Dayton, in this State, on the 20th day of January, 1880, at eight o'clock in the evening, and she left the car for the purpose of changing to another train at that place, and in her effort to step from the car to the station platform, she fell between it and the car, and sustained the injuries of which she complains. She alleges that the space between the platform and the car was too great, and that in consequence thereof, when she stepped off from the car, she failed to reach the platform, and was thus caused to fall. There is no complaint that the platform was out of repair, or that it was improperly constructed. The only complaint is that it was too far from the car. The platform was two and one-half feet higher than

the top of the iron rail, and about three feet above the top of the ground. The distance between the outer line of the car and the platform was eleven inches. There were three steps at the end of the car, and the lower one was eight inches below the top of the platform and one foot and seven inches from the side thereof. The second step was two feet and two inches from the side of the platform and about four inches lower than the top thereof. The height of the platform of the car above the iron rails was about four feet. The plaintiff passed out of the car on to the car platform and then to the second step, and without having hold of the iron railing on either side and without looking to see the station platform she stepped out, and failing to reach it, fell.

There was no proof that the platform was not constructed in the ordinary way, nor that the space between it and the car was any greater than the exigencies of the business and the operations of the railroad required. There was no evidence that any accident had ever happened at that station before on account of the construction of the platform, or that there had ever been any complaint in reference to it. On the contrary the evidence shows that the platform had been used for many years by men, women and children, and that no one but the plaintiff had ever been injured or had suffered any inconvenience on account of the distance of the platform from the cars. Thousands of men, women and children must have passed from the cars to this platform in entire safety. Under such circumstances how can it be properly said that the defendant was guilty of any carelessness in its construction and maintenance? It was not bound so to construct this platform as to make accidents to passengers using the same impossible, or to use the highest degree of diligence to make it safe, convenient and useful. It was bound simply to exercise ordinary care, in view of the dangers attending its use, to make it reasonably adequate for the purpose to which it was devoted. In the case of a platform which had always been safe, and answered its purpose for men, women and children, in all kinds of weather, by night and by day, for

many years, what was there to suggest to any prudent person any change or improvement for the purpose of making it more safe or convenient? In the case of *Dougan* v. *Champlain Transportation Company* (56 N. Y. 1), the plaintiff's intestate, a passenger, slipped under the gangway rail of a steamboat, fell overboard and was drowned; and it appeared that all the boats upon Lake Champlain were constructed in the same manner, that they had been so run for many years, and there was no proof tending to show that anyone had ever before gone overboard in that way. And it was held that the plaintiff was properly nonsuited. GROVER, J., writing the opinion said : " It will be seen that the only proof of negligence was the omission to enclose the space between the railing and deck so as to preclude the possibility of slipping under it. Had there been any proof tending to show that any such danger would be apprehended by a reasonable, prudent person, the evidence should have been submitted to the jury. But the evidence showed that all the passenger boats upon the lake had been constructed and run in the same way in this respect; that boats had so been run for a great number of years, and there was no proof tending to show that any one had ever before fallen and gone overboard under the railing, or that any such danger had been apprehended by any one. It is obvious that no such thing was likely to occur." In *Loftus* v. *Union Ferry Company* (84 N. Y. 455) the plaintiff's intestate, a child six years old, while leaving one of defendant's boats, fell through one of the openings in the guard rails into the water and was drowned. The plaintiff recovered, and it was held that the verdict was properly set aside. ANDREWS, J., writing the opinion of the court, said : " The law does not impose upon the defendant the duty of so providing for the safety of passengers that they shall, encounter no possible danger, and meet with no casualty in the use of appliances provided for it. It was possible for the defendant so to have constructed the guard that such an accident as this could not have happened, and this, so far as appears, could have been done without unreasonable expense or trouble. If the

defendant ought to have foreseen that such an accident might happen, or such an accident could have reasonably been anticipated, the omission to provide against it would be actionable negligence. But the facts rebut any inference of negligence on this ground. The company had the experience of years certifying to the sufficiency of the guard. That it was possible for a child, even a man, to get through the opening was apparent enough. But that this was likely to occur was negatived by the fact that multitudes of persons had passed over the bridge without the occurrence of such a casualty." In *Burke* v. *Witherbee* (98 N. Y. 562), while an empty car was descending a mine the hook which fastened it to the cable became detached from the car and it ran down the mine and killed plaintiff's intestate. The judgment for plaintiff was reversed because there was not sufficient proof of actionable negligence on the part of the defendants. The judge writing the opinion said : " In this mine alone, cars drawn by a hook must have made several hundred thousand passages without a single accident. What more could any reasonable or prudent man have to justify him in believing that this convenient appliance was also a safe and proper one ? What greater or different test could it have been subjected to before a mine owner could use it without the imputation of negligence ? It seems to us quite inadmissible, if not preposterous, to attribute negligence to a mine owner for using an implement which had been employed in different mines, and which, under varying conditions, upon countless occasions uniformly answered its purpose without injury to any one." The application of these authorities to this case is quite obvious. No structure is ever so made that it may not be made safer. But as a general rule, when an appliance or machine or structure, not obviously dangerous, has been in daily use for years, and has uniformly proved adequate, safe and convenient, its use may be continued without the imputation of culpable imprudence or carelessness.

On the evening when this accident happened, the evidence

tends to show that it was dark, and that the platform was not plainly visible. It was somewhat lighted by light which came from the car windows, the depot windows and a lantern in the hands of the conductor; and it does not appear that it was ever lighted in any other way, or that it was usual to light such platforms in any other way. The fact that it was dark made it incumbent upon the plaintiff to take the greater care. She could have kept hold of the iron railing until her foot touched the platform, and then she would have been safe. It was not the duty of the defendant to furnish some one to aid her in alighting from the car.

There was some proof that about the time the plaintiff attempted to step from the car upon the platform, there was a slight jerk or jar of the car; but it does not appear that that had anything whatever to do with the accident.

A careful consideration, therefore, of the whole case as it appears in this record, has led us to the conclusion that the defendant is not legally responsible for the accident which befell the plaintiff. It was a misadventure, and no rule of law will permit her to charge the misfortune, in whole or in part, to the defendant.

The judgment should, therefore, be reversed and a new trial ordered, costs to abide event.

All concur.

Judgment reversed.