HARRY KEMMERER, as Administrator, etc., of DE WITT KEMMERER, Deceased, Appellant, *v.* THE MANHATTAN RAILWAY COMPANY, Respondent.

*Master and servant — when an employer is not liable for injuries sustained by his employee — system of fog signals used on an elevated railway.*

A master does not guarantee the safety of his servants. He is not bound to furnish them an absolutely safe place to work in, but is bound simply to use reasonable care and prudence in providing such a place. He is not bound to furnish the best known appliances, but only such as are reasonably fit and safe.

He satisfies the requirements of the law if, in the selection of machinery and appliances, he uses that degree of care which a man of ordinary prudence would use, having regard to his own safety, if he were supplying them for his own personal use. It is culpable negligence which makes the master liable, not a mere error of judgment.

Where an elevated railway company has used a system of fog signals for over fourteen years without accident, it will be justified in continuing to use such system without negligence being imputed to it in that regard, and if it has in use a system which is reasonably safe, the fact that another system which could have been maintained by it was somewhat better than the one used, will not be sufficient to establish negligence.

APPEAL by the plaintiff, Harry Kemmerer, as administrator of De Witt Kemmerer, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 1st day of June, 1893, upon the

dismissal of the complaint directed by the court after a trial before the court and a jury at the New York Circuit.

*Henry G. Attwater*, for the appellant.

*Joseph H. Adams*, for the respondent.

PARKER, J. :

Plaintiff's intestate, while engaged in the performance of his duties as a fireman on the Sixth avenue line of defendant's railway, on the morning of January 2, 1891, was so severely injured that he died within a few hours thereafter.

His injuries were occasioned through a collision between the locomotive upon which he was riding and the rear car of the train going in the same direction. At the time of the accident there was a very heavy fog which prevented the engineer, as he testified, from seeing the car in front of him until he was within about twenty-five feet of it. When the engineer passed One Hundred and Forty-fourth street with his train, the fogman stationed beside the track signaled him that a train was a minute or two ahead. From that time until he discovered the car in front of him, which was near One Hundred and Fiftieth street, he ran the train, according to his testimony, a little faster than a man would walk, or at the rate of between four and five miles an hour, keeping all the time a sharp lookout for a train ahead. Owing to the density of the fog, however; he says he was unable to discover it until so close to it that prompt action taken on his part did not and could not avert the collision.

The learned judge at the Circuit decided that this unfortunate accident was not occasioned because of the omission of the defendant to discharge any duty which it owed to plaintiff's intestate. Our examination of the record leads us to the same conclusion.

The complaint alleges that defendant failed in the performance of the obligations which it was under to plaintiff's intestate and others similarly situated, in two respects, viz. :

1. In not providing a proper signal system, or a proper set of signals, to warn those in charge of moving trains of dangers and obstacles ahead.

2. In not providing a proper and sufficient number of persons to use and operate the signals and signal system in use.

As to the last ground, there is no evidence whatever tending to show that there was a less number of men employed for signal purposes on the day of the accident than usual, or that those employed were incompetent, so we may confine discussion to the first ground of negligence assigned.

The Court of Appeals, in *Harley* v. *Buffalo Car Manufacturing Company* (142 N. Y. 31–34), in defining the measure of duty which a master owes to his servant in providing appliances for his safety, used the following language : " The master does not guarantee the safety of his servants. He is not bound to furnish them an absolutely safe place to work in, but is bound simply to use reasonable care and prudence in providing such a place. He is not bound to furnish the best known appliances, but only such as are reasonably fit and safe. He satisfies the requirements of the law if, in the selection of machinery and appliances, he uses that degree of care which a man of ordinary prudence would use, having regard to his own safety, if he were supplying them for his own personal use. It is culpable negligence which makes the master liable, not a mere error of judgment."

While this is but a new statement of an old proposition, it helps to keep in mind the principle of law which should guide the court in the consideration of the facts of this case.

While the accident would not have occurred but for the presence of a dense fog, such fogs were not unusual, and the question, therefore, is whether defendant exercised that reasonable care and caution which a man of ordinary prudence would provide for his own safety were he supplying signals for his protection.

In the first place, it should be said that the evidence shows that the system employed had been in use for over fourteen years, and the evidence does not suggest a collision at this point during that time. This long use of the system without accident would seem to have justified its continuance without imputation of negligence. (*Lafflin* v. *Buffalo, & S. W. R. R. Co.*, 106 N. Y. 136 ; *Brady* v. *Manhattan Railway Co.*, 127 id. 46 ; *Harley* v. *Buffalo Car Manufacturing Co.*, *supra*, 37.)

The fog system used by defendant was described by defendant's witness Germain, the engineer of Kemmerer's train, as follows : " This system on this railway at that time was this, that where a

train stopped, the rear brakeman should immediately go back, give notice to the next train; when the train behind stopped, the flagman on that train should go back to the next train, and so that the men on each train were bound to guard their own train. Then, in addition to that, we had signal stations with the red ball, such a ball as we had at One Hundred and Fifty-third street, which, unless the weather was very foggy, we could see at a distance. In addition to that we had the fogman, who stood there to indicate how far the trains were ahead of us with their fingers. Then we had the fogman at One Hundred and Fifty-third street, whose duty it was as soon as a train was stalled at One Hundred and Fifty-third street, to move right back and see that the man got out and gave the warning. That was our system, and that system had been in force on that road as long as I can remember. We were perfectly well acquainted with it. * * * It was the duty also in foggy weather to have lights out on the rear of the cars, and that has always been the practice on the road."

The defendant, of course, had every incentive to provide for the safety of its trains. The large number of passengers carried every day of the year would necessarily stimulate endeavor to provide for their safety, and at the same time assure the defendant against loss and damage. The result of its efforts was the system testified to by Germain, which for a long period of years had proved adequate at this point. The working out of the system on this occasion failed to obtain the results for which it was designed, but it cannot be said from the testimony in this record that it was the fault of the system. Its apparent failure was probably not due to the system, but rather to the omission of some of the employees charged with its execution to perform their duty.

It is difficult to fix the responsibility of the failure. Whether it was owing to the negligence of the engineer of Kemmerer's train; to the negligence of one of the two rear brakemen of the train stopping at One Hundred and Fiftieth street; to the negligence of the fogman at One Hundred and Fifty-third street, or to the failure of the employee charged with that duty to put lights on the end of the last car of the preceding train, rendered necessary because of the density of the fog, we cannot say. Nor is it important that we should be able to determine which one of these several persons

proved unfaithful in the moment of peril, for each of them was the fellow-servant of the plaintiff, and for the neglectful acts of any or all of them resulting in the accident the defendant is not responsible.

The plaintiff proved that there was in use on elevated roads, including a portion of defendant's lines, an automatic fog signal. As to this evidence, it should be observed in the first place that if it could be said to establish that system to be somewhat better than the one adopted by the defendant, still defendant's liability would not be made out, because the evidence also established that the system employed by it was reasonably safe. But the evidence as to the use of an automatic system by the Kings County Elevated road, testified to by plaintiff's witness Graham, hardly warrants the conclusion even that said system could be wisely and safely substituted for the one in use by the defendant. He testified, " No one sets that signal; the engine sets it when it strikes the lever; it is automatic and works itself; besides, when there is a fog we have men distributed all along the line of the road at the danger points *to hold up their fingers to the locomotive engineer to tell him how long the train has been gone ahead of him,* but they ain't there to govern this signal, because it works itself." Thus, it appears that, in its practical workings, the automatic signal was not regarded by that company as furnishing adequate protection. In addition men were distributed along the line to tell the engineer how many minutes ahead of him the other train was. This requirement was a part of defendant's system, but only a small part, as already sufficiently appears. We think the plaintiff failed to furnish such evidence of defendant's negligence as would have justified the court in submitting the case to the jury.

The exception does not call for a reversal, which was taken to the refusal of the court to permit one of the plaintiff's witnesses to answer the following question : " Suppose such a system as you have there on the Kings County road were put in between 155th street and 145th street, on the Manhattan roads, describe how it would work ? "

Whether there was legal objection to the inquiry we need not consider, because the refusal to receive the evidence was harmless in its effect.

The witness not only testified to the use of the system on the Kings County road, but, before leaving the witness stand, described how the system worked on that road.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.