(31 App. Div. 412.)

GREEN v. MIDDLESEX VAL. R. CO.

(Supreme Court, Appellate Division, Fourth Department. June 18, 1898.)

1. PASSENGERS—ALIGHTING AT DEPOT—NEGLIGENCE.

The question of negligence and contributory negligence is for the jury in a case where a lady passenger, unacquainted with the place, in alighting from the train at a country station on a dark night stepped between the car and the platform; this being 22 inches from and somewhat above the lower step of the car; there being no light, as the chimney to the lamp on the outside of the depot had been broken; the conductor having, after assisting several passengers preceding her to alight, gone away; and she, though unable to see the platform, having felt her way to the lower step, and given a spring as she swung herself off.

2. DEPOSITION—ADMISSION IN EVIDENCE.

A deposition of a physician taken at physical examination of plaintiff before trial, under Code Civ. Proc. § 873, cannot be read at the trial unconditionally, as, while section 881 provides that the deposition may be read in evidence by either party, section 882 provides that the deposition, except that of a party taken at the instance of an adverse party, shall not be so read till proof of the witness' death or inability to attend.

Ward, J., dissenting.

Appeal from trial term, Monroe county.

Action by Ida Green against the Middlesex Valley Railroad Company. From a judgment on a verdict for plaintiff, and from an order denying a motion to set aside the verdict and for a new trial, defendant appeals. Reversed.

Argued before HARDIN, P. J., and ADAMS, GREEN, and WARD, JJ.

J. Henry Metcalf and Charles J. Bissell, for appellant.

Thomas Raines, for respondent.

ADAMS, J. The plaintiff brings this action to recover damages for personal injuries received by her while attempting to alight from one of the defendant's trains. At the time of the accident the defendant was a common carrier, and was engaged in operating a short line of railroad between Stanley and Naples, in the county of Ontario. About midway between these two termini is a station known as "Middlesex," and on the evening of March 8, 1893, the plaintiff reached this station upon one of the defendant's trains, and, in attempting to alight therefrom, fell between the car step and station platform, receiving the injuries of which she complains, and which the evidence tends to show were quite serious in their character. It seems to be conceded that the distance between the station platform and the bottom step of the passenger coach was about 22 inches, and, while the evidence upon the subject is quite conflicting, it is fairly inferable that this step was several inches below the surface of the platform. The plaintiff testified that she resided in the city of Rochester; that she was intending to visit her sister, who resided in Middlesex; and that she had never been at the latter place since the station platform had been constructed, although she had learned from her sister that there was a platform attached to the depot building, upon which passengers were accustomed to step when alighting from

the cars. Upon the night in question, which, it is admitted, was dark and cloudy, the train stopped at the station, and several people, including one or two ladies, preceded the plaintiff out of the car, and were assisted by either the conductor or trainman while alighting, so that they stepped onto the platform with no difficulty; but before the plaintiff reached the platform of the car in which she was riding, the evidence tends to show, for some reason both of these officials had started for the forward end of the train, and consequently when the plaintiff attempted to alight there was no one to assist her. She testified that when she went out of the car door she could not see the platform, but that she did see the hand rail of the car, and that she took hold of it with her right hand, feeling her way down in the dark with her left foot; that, when she was sure that she had reached the bottom step, she swung herself off, and gave a spring, supposing that she would strike the platform, instead of which she fell short of it, and was only saved from falling to the ground by some one who seized her and pulled her forward on to the platform.

There was some conflict in the evidence as to what took place at the time the plaintiff attempted to alight from the train, but the jury obviously accepted the plaintiff's version of the occurrence, as they clearly had the right to do; and for the purposes of this review it must consequently be assumed that her narration of the events which immediately preceded her injury was correct. It is insisted, however, that even upon this assumption the verdict should not be permitted to stand, inasmuch as the evidence, upon the plaintiff's own showing, will not support the conclusion either that the defendant was negligent, or that she was free from contributory negligence; and our attention is directed to the case of Lafflin v. Railroad Co., 106 N. Y. 136, 12 N. E. 599, which it is said is an authority amply sustaining this contention. It is not to be denied that the case cited is, in some of its circumstances, similar to the one now under consideration; but nevertheless the two cases are in some important respects so clearly distinguishable as to deprive the one cited of much of its value and importance as a precedent to be followed in the present case. Perhaps the feature which is most clearly distinguishable is the one relating to the matter of lights. It seems to be conceded that the only lamp from which any light was obtained which was of the slightest service to the passengers who were attempting to leave this train, aside from two or three hand lanterns which were carried by railroad officers, or persons who were at the station to meet friends arriving upon the train, was one inside of the ticket office in the station house. It does appear, however, that there was another lamp on the outside of the depot, which was not lighted upon this evening;. and several witnesses testified to declarations upon the part of the station agent to the effect that he was in fault for not lighting this lamp, giving as his excuse therefor that the globes or chimneys had become broken, and that he was waiting for the company to replace them with new ones. Had this lamp been lighted, it is but reasonable to assume that it would have served

the purpose for which it was obviously designed, and so have enabled the plaintiff to see the platform, and regulate her movements accordingly. Again, while, as is said in the Lafflin Case, the defendant was under no legal obligation to provide some one to aid passengers in alighting from its cars, it appears that the officers on this train had assumed to render such aid to some of the passengers who preceded the plaintiff in going from the car; but, if her story is to be believed, before her time came to alight they had turned their attention in another direction, and left her to look out for herself. These we think are circumstances which, taken in connection with such others as were made to appear upon the trial, raised an issue of fact in regard to the negligence of the defendant, as well as that of the plaintiff, within the authority of decisions more recent than the one cited by counsel, and which appear to materially modify the rule for which he is contending. Boyce v. Railway Co., 118 N. Y. 314, 23 N. E. 304; Ryan v. Railway Co., 121 N. Y. 126, 23 N. E. 1131. We are not unmindful of the fact, to which our attention is directed, that the cases last cited arose out of conditions existing in a populous city, while the one we are here considering arose at a small station in the country, where the number of persons taking and leaving the cars was comparatively small; but the principle which requires that suitable and adequate precautions shall be taken by a railroad company to warn and protect passengers in alighting from its cars is present in every case of this character,—the real question being whether the precaution taken in a given case was, all things considered, adapted to the conditions which then existed.

But, while we think the present case was properly submitted to the jury, we are constrained to reverse the judgment and order appealed from by reason of what we think was an erroneous ruling during the progress of the trial. It seems that at the instance of the defendant the plaintiff was, prior to the trial, required to submit to a physical examination, as provided by section 873 of the Code of Civil Procedure. This examination was had before a referee, and in the presence of two female physicians, who gave oral evidence before the same referee, and their depositions thus taken were offered in evidence upon the trial. In each instance the offer was objected to upon the ground that the depositions could not be read in evidence, save in the absence of the witnesses, and that the witnesses were then present in court under subpœna. The learned trial court overruled the objections, and permitted the depositions to be read, to which ruling the counsel for the defendant duly excepted, and the depositions were thereupon read. The case therefore presents a novel as well as an exceedingly interesting question. The section to which reference has been made is part of a general scheme provided by the legislature for the examination of parties before trial, and, as amended in 1893 (Laws 1893, c. 721), it was obviously intended to establish a rule of procedure by means of which, in cases of this character, a defendant could ascertain the nature and ex-

tent of the personal injuries from which the plaintiff claimed to be suffering, and thereby enter upon the trial of his case with some knowledge of what he would be called upon to meet. The method of procedure by which information was to be obtained was not clearly defined by the statute, but it seems to be now settled that the physical examination which it contemplates is but a part of the examination of the party before the trial, and that it is to be conducted by means of the oral examination of the plaintiff, as well as of the attending physicians. Lyon v. Railway Co., 142 N. Y. 298, 37 N. E. 113. But, when this much has been accomplished, the question arises as to how far, and under what circumstances, the depositions thus taken are competent evidence upon the trial. In the case last cited it was said, "The record of the examination is placed on file, and both sides know what must be met if it is introduced in evidence, as it may be." Does this mean that the depositions of the physicians, as well as of the party, may be read in evidence unconditionally? We do not so construe it; for while it is provided by section 881 that the deposition, or a certified copy thereof, may be read in evidence by either party at the trial, it is expressly declared by section 882 that such deposition, "except that of a party, taken at the instance of an adverse party, * * * shall not be so read in evidence until it has been satisfactorily proved that the witness is dead, or is unable personally to attend by reason of his insanity, sickness or other infirmity, or that he is confined in a prison or jail; or that he has been and is absent from the state, so that his attendance could not, with reasonable diligence, be compelled by subpœna." The purpose of this condition is quite apparent, and it is this: That while a party may, under certain circumstances, procure the evidence of a witness before the trial of the action, he must nevertheless produce the witness upon the trial, if possible, in order that the jury may have the benefit of an examination conducted in open court; and it is not until he has shown his inability to thus produce the witness that he is permitted to read his deposition. Nor are we compelled to look far for the reason of this requirement, for it is a fundamental rule of the common law that parties to a legal controversy shall be confronted by the witnesses on either side, whose testimony shall be given orally in the presence of the court and jury. This case furnishes perhaps as apt an illustration as can be found of the importance of this rule; for the two witnesses who were examined in connection with the plaintiff were female physicians, and they not only testified to the physical condition in which they found the plaintiff, but they also expressed an opinion as to the particular ailment from which she was suffering, based upon such symptoms as they were able to discover. This surely was evidence which ought to have been given in the presence of the jury, in order that they might judge of its value, to some extent, at least, by the manner, appearance, and intelligence of the witnesses who furnished it. While, therefore, we find no fault with the method in which the plaintiff's examination was

conducted, we think that the defendant had a right to insist that the attending physicians, who, it is stated, were present in court during the trial, should have been required to give their evidence in the same manner as would have been the case had their deposi-tions been taken separate and apart from the plaintiff's physical examination. We consequently conclude that the exceptions to the rulings of the court permitting these depositions to be read present error which requires a reversal of the judgment and order appealed from.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except WARD, J., who dissents.