to the time of trial by way of damages, and in the absence of any allegation and proof of special damages the damages flowing from the nonpayment of a specified sum which had become due would be the interest from the date it so became due. It is quite clear in this case that the plaintiffs became entitled to the payment of this sum before the commencement of the action; or, if it be said that a demand was necessary, then the bringing of the action was a demand and the account accrued at that time; and in order to obtain full indemnification plaintiffs were entitled to recover interest on the amount which the defendant should have paid, either at the time of the commencement of the action or some time prior thereto, and neglected and refused to pay it. We think the plaintiffs were entitled to the allowance of interest, and that the judgment should be modified accordingly.

Judgment modified by allowing to the plaintiffs the amount of interest found by the referee from the beginning of the action to the time of the trial, and the judgment as so modified affirmed, with costs. All concur.

---

(100 App. Div. 161)

### HANCOCK v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 4, 1905.)

1. CARRIERS—INJURY TO PASSENGER—JURY QUESTION.
    In an action against a carrier for injuries to a passenger, alleged to have resulted from tripping on the rails of defendant's main track as plaintiff was leaving the train, which had not stopped at the regular platform, evidence examined, and whether defendant was negligent held a question for the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.
    Whether the plaintiff was guilty of contributory negligence *held* a question for the jury.

3. SAME.
    Freedom from contributory negligence need not be shown by direct testimony, but the inference may be drawn from the general tendency of all the evidence in favor of the plaintiff.
    Stover and Williams, JJ., dissenting.

Appeal from Ontario County Court.

Action by Olive Hancock against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Harris & Harris, for appellant.
E. A. Griffith, for respondent.

McLENNAN, P. J.   The finding of the jury that the defendant was guilty of negligence, and that the plaintiff was free from contributory negligence, is amply supported by the evidence.

¶ 3. See Negligence, vol. 37, Cent. Dig. § 275.

At about 7 o'clock on the evening of November 18, 1903, the train upon which the plaintiff was a passenger stopped on the second track from the depot platform at Geneva, N. Y., to allow her and others to alight therefrom. In front of the depot, and extending for its entire length, parallel with the tracks, there was a plank platform, 15 feet wide; and to the west of it a similar platform, 8 feet in width, extended for a considerable distance to a cross-street, and to a point where the buses stood in readiness to serve passengers coming from the train. The main track was close to the depot platform, and 10 feet from it; and further from the depot there was a siding, upon which the train in question was. A short distance west of the depot a walk or platform, about 30 feet wide, extended from the depot platform, and on a level with it, across the first or main track, and to the first rail of the siding. The planking was flush with the rails, so that its surface was substantially level and smooth. Next west of such plank walk there was a space 40 feet wide, extending from the siding to the platform, which was not planked, and the rails extended above the surface of the ground their full thickness—between 5 and 6 inches. Next west of such unplanked space there was another platform or walk leading from the depot platform to the siding, which was substantially like the other. These two walks or platforms, extending across the first or main track, and to the first rail of the siding, were constructed for the purpose of facilitating the passage of persons leaving or entering defendant's trains, and so that they might have a smooth and unobstructed way to travel upon. On the night in question the train, instead of stopping so that the end of the car in which the plaintiff was riding was opposite the plank platforms or walks, was stopped so that the end of the car was opposite the unplanked space between such walks. She was helped to alight from the car by the conductor, and started to follow the other passengers to the depot platform, in the direction where the buses stood, which she determined by their calls for passengers. She had walked a few steps when she tripped upon one of the rails of the main track, fell to the ground, and sustained the injuries of which she complains. The evidence tends to show that the night was dark; that it was a "cold, stormy, blustering night"; and that the place in question was not adequately lighted to enable the plaintiff to observe its condition. The plaintiff had frequently gone to and from Geneva on defendant's railroad previous to the night in question, but always before, as she understood it, the train had stopped on the main track, next to the depot platform. At all events, she had not previously been obliged to walk over any rails or uneven surface to reach the cars, and, so far as she observed, the train had stopped in its accustomed place. If the car in which the plaintiff was riding had been stopped so that the end was opposite the broad walk leading from the platform, it would have been quite as safe as if it had been on the main track. Passengers would then have alighted directly on the depot platform, and in the other case they would have alighted on what was practically an extension of that platform, on the same level, and affording a smooth and unobstructed way; but, instead, solely because of the manner in which the train was stopped, the plaintiff, in order to reach the platform, was compelled to pass over an uneven surface, to step over the two rails

of the main track, and up onto the platform in front of or at either side —was compelled to do what had never been necessary for her to do before in going to and from defendant's trains at Geneva.

The jury were justified in finding that the place where the plaintiff alighted from the car, and where she was invited to alight, was unsafe and dangerous, and that under all the circumstances the defendant was guilty of negligence. The law requires a railroad company to take suitable and adequate precaution to warn and protect passengers alighting from its trains against danger, and the only question presented in that regard in this case is whether or not the precautions taken were adapted to the conditions which existed. In Boyce v. Manhattan Railway Company, 118 N. Y. 314, 23 N. E. 304, the court stated the rule in the following language:

"By stopping its train at the point in question it [the company] invited its passengers to alight, and was thereby charged with the duty of using due care to provide proper and safe means of getting from the platform of the cars to the platform of the station."

It will be borne in mind that the plaintiff testifies that, owing to the storm and weather conditions, it was dark—so dark that she could not see the obstructions in her pathway, and which caused her to fall. By the defendant's act she was compelled to take that course, when by the exercise of the slightest care it might have afforded her a perfectly safe place upon which to alight; it only being necessary to have stopped the car so that the end would be opposite one of the plank walks. She was not warned of the danger, and, by reason of the darkness, did not observe it.

We think the case of Lafflin v. Buffalo & S. W. R. Co., 106 N. Y. 136, 12 N. E. 599, 60 Am. Rep. 433, has no application to the case at bar. There is no evidence in this case tending to show that a passenger car composing one of defendant's trains stopping at Geneva had ever before stopped so that its end was between the plank platforms, or that passengers were ever before required to leave the cars under the conditions which existed on the night in question. So that it is of no importance that other accidents had not happened, and that thousands of other passengers had passed to and from such cars in safety.

The statement of facts already made is a sufficient answer to the claim that the plaintiff was guilty of contributory negligence. That question was also for the jury, and its finding in that regard is amply supported by the evidence. As was said in the Boyce Case, supra:

"In the cases cited in support of this position [that the plaintiff was guilty of contributory negligence], the person injured knew or should have known of the danger to be encountered, and hence was required to give general evidence that he exercised proper care; but in this case the plaintiff was ignorant of any circumstances requiring the use of special care, and hence was relieved of the necessity of showing that she used special care. While the actual situation was dangerous, the apparent situation was free from danger. With her limited knowledge of the facts, what should she have done that she did not do? Ordinarily what everybody does is all that anybody need do. Unconscious of danger, she did what the other passengers did. If she had known of the hole, or if it had been light enough for her to see it by the exercise of ordinary care, a different question would have been presented. Under the circumstances which she had the right to assume ex-

isted, she was under no obligation, as matter of, law, to look before she put her foot down; but it was a question of fact for the jury to decide not only whether she should have been more vigilant, but also whether, if she had looked, she could have seen the hole in the surrounding darkness. Johnson v. H. R. Co., 20 N. Y. 65, 75 Am. Dec. 375; Ernst v. H. R. R. Co., 35 N. Y. 9, 90 Am. Dec. 761; Morrison v. N. Y. C. & H. R. R. Co., 63 N. Y. 643; Taber v. D., L. & W. R. Co., 71 N. Y. 489; Hart v. H. R. B. Co., 80 N. Y. 622. The circumstances did not require that freedom from contributory negligence should be shown by direct testimony, but they permitted the inference to be drawn from the general tendency of all the evidence in favor of the plaintiff."

See, also, Ayres v. D., L. & W. R. Co., 158 N. Y. 254, 53 N. E. 22.

We think none of the exceptions to which attention has been called present reversible error. It follows that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs.

SPRING and HISCOCK, JJ., concur.

STOVER, J. (dissenting). The action was brought to recover damages for personal injuries to plaintiff, sustained at Geneva, N. Y., in falling on a track after alighting from a passenger train. Plaintiff was a passenger upon a train which arrived at Geneva about 7 o'clock in the evening on November 18, 1903. She had been traveling in company with her daughter, who alighted at the same time. The train consisted of a standard day coach and combination smoker and baggage car; the coach being next to the locomotive, and the combination car in the rear. The train arrived in the station at Geneva upon the second track from the platform or planking about the depot. The passengers, in order to reach the planked space about the depot, were required to cross the track lying next to the planking. For a distance of about 30 feet west of the depot building there is planking between the tracks. For a distance of over 40 feet there is no planking, and beyond that there is another planking, extending for 20 or more feet towards Exchange street. Ten feet west of this latter planking there is a water plug. The bus stand is on the southerly side, and west of the depot. The plaintiff testified that she alighted from the train, going to the farther end of the car in which she had been riding; that the conductor helped her down on to the ground from the car; that she started for where the noise was, following the crowd towards where the buses were; that she had gone but a few steps before she fell across the track, and struck her right arm on the track. She says, "The track that I fell on there, or struck on, was the opposite track." She explains that she means the opposite rail of the track next to the depot. She also said at one time that she was 14 feet from the building when she fell, and, when asked if she meant the depot, she says she does not know what building it was; and, when asked if she could see a building, she seems to have no recollection of it. She at first said she tripped upon a tie, and afterwards, upon an examination, left the evidence in some doubt as to whether she knew how she did happen to fall. It appears that there was an incandescent electric light upon a pole within not more than 50 feet of the place where the plaintiff fell, as she indicated upon the photographs at the time of the trial, and which

were used upon the argument; that there were three electric lights in front of the station; that the cars were lighted with a number of Pintsch lights—the conductor says five; and that the conductor, at the time she was helped off the car, had a lantern in his hand. The witnesses also testified with reference to the lights in the buildings and various other surroundings.

The only theory upon which negligence can be predicated is that a railroad company is bound to keep the space between its tracks level at all points where passengers are invited to alight. It is quite evident in this case that the plaintiff did not fall, as the evidence is claimed to indicate, upon the first rail of the track running next to the depot. She had alighted from the train in safety, and on the ground, as she says, and must have known that, in order to reach the platform or the buses towards which she was directing her steps, she would have to cross the intervening track. She said she had taken a few steps. As it would only take three or four steps to cross the intervening space in a direct line, she could not have taken "a few steps," if she was exercising ordinary care, without discovering the rails and ties. It is almost incredible that she could have gone out of the car, as she says, and started for the buses with the rest of the crowd, without knowing the exact situation, if she was exercising ordinary care. She describes upon her examination, with considerable detail, the manner of alighting. She also describes the other passengers going towards the buses; but, upon further examination, it is quite apparent that, from lack of recollection, confusion, or other causes, her recollection is not clear, and her testimony does not convey a clear idea as to the exact manner in which the accident happened. She says that she went right straight away from the car, and yet, if she had crossed the first rail in safety, as she must have done, and probably did, with the aid of the lantern, she must have known, if exercising ordinary care, that the space there was not planked, and that she would have to exercise corresponding care. She testified at first, "I hit my foot against a tie or something." Again she says, "I went to the door. I think it was the front end of the car"—although on her direct examination she had testified that she got off the rear end of the car. She says it was very dark when she got off the train, and that she could not see where she was going, yet the evidence is almost conclusive that the incandescent electric light and the lights in the depot and the car were all burning, and the conductor had his lantern when he assisted her from the car. It seems more probable that the plaintiff failed to take notice of the surroundings, and failed to avail herself of the opportunities for protecting herself.

A passenger may not heedlessly leave a train, without an attempt to ascertain the surroundings. The plaintiff could not shut her eyes, and walk from the train in the direction of the noise of the other passengers, relying upon the defendant as a guarantor that no obstacle, slight or otherwise, would be encountered by her in reaching the point towards which she was traveling. It is true, there is an obligation upon a carrier to furnish a reasonably safe place for passengers to alight; but can it be said that where the only defect complained of is a track necessary to the operation of the road, and which can be easily crossed

by anybody exercising ordinary care, either day or night, it is such a defect as to render a railroad company liable? Certainly passengers know that they are likely to encounter railroad tracks about a depot, and when one familiar with the location, having observed it for many years, with knowledge that an intervening track is to be crossed, undertakes to cross it without attempting to see the way, he cannot be said to be exercising ordinary care. It appears from the evidence that this was the usual stopping place for this train; that it had stopped there for years; that passengers had been alighting from the same point and in the same manner as the plaintiff alighted. As was said in Lafflin v. Buffalo & S. W. R. Co., 106 N. Y. 136, 12 N. E. 599, 60 Am. Rep. 433:

"There was no evidence that any accident had ever happened at that station before on account of the construction of the platform, or that there had ever been any complaint in reference to it. On the contrary, the evidence shows that the platform had been used for many years by men, women, and children, and that no one but the plaintiff had ever been injured or had suffered any inconvenience on account of the distance of the platform from the cars. Thousands of men, women, and children must have passed from the cars to this platform in entire safety. Under such circumstances, how can it be profitably said that the defendant was guilty of any carelessness in its construction and maintenance. It was not bound so to construct this platform as to make accidents to passengers using the same impossible, or to use the highest degree of diligence to make it safe, convenient, and useful. It was bound simply to exercise ordinary care, in view of the dangers attending its use, to make it reasonably adequate for the purpose to which it was devoted."

Applying that rule—and it seems to be one founded in good sense—to the case in question, if no accident had happened before at this point, and no complaint as to the manner of maintenance, how can it be said that the situation was a dangerous one? A dangerous situation is one from which danger or accident may be reasonably apprehended, not may possibly happen. People may fall from various causes at points not dangerous, and where a fall is had at a point in use by many people for a long time without accident, or, so far as known, apprehended danger, it would seem fair to conclude that negligence could not be predicated against one maintaining a situation at that point as it had been for many years.

The jury must have predicated the negligence of the defendant upon a failure to maintain planking between its tracks, for, unless they disregarded the testimony with reference to the lighting, the evidence was clear that at the time of the accident there were at least three or four electric lights, besides the lights of the car and the lantern, within a distance of 50 feet on either side of the plaintiff; the distance from the depot to the electric light towards Exchange street being 97 feet, or about 40 feet from where plaintiff fell; the first of the three lights towards plaintiff necessarily being the difference between the 97 feet and the 40 feet from where plaintiff fell.

The charge of the judge, to which no exception was taken by the plaintiff, was to this effect:

"The testimony of several of defendant's witnesses shows that the lights were burning at the time of the accident. There is testimony on the part of the plaintiff to the effect that they did not see them, but I think these witnessess all testified that they did not take any notice of them."

So that, in the face of this positive testimony, it would be decidedly against the weight of evidence to say that at the time of the accident the place was not properly lighted.

There is no evidence from which it could be claimed that the construction of the tracks there is not the ordinary proper construction, or that there was any condition which rendered the place of more danger than that existing in the ordinary construction of railroads. So we are brought to the proposition that it was negligence for the defendant to permit passengers to alight at a point where there was no planking between the tracks. No precedent is cited for such a holding as this, and we think that it cannot be maintained. We think the evidence shows that defendant had fulfilled its full duty towards the plaintiff, that it was not chargeable with negligence in its failure to plank between its tracks, and that the injury arose from the failure of the plaintiff to use such care as one ordinarily ought to under the circumstances in which she was placed, or from some cause not explained by the evidence.

WILLIAMS, J., concurs.