(13 Misc. Rep. 102.)

### FOGASSI v. NEW YORK CENT. & H. R. R. CO.

(Common Pleas of New York City and County, General Term. June 3, 1895.)

CONTRIBUTORY NEGLIGENCE—EVIDENCE.

> In an action for injuries received by falling from the gang plank while leaving defendant's steamboat, plaintiff's husband testified that he preceded her in leaving the boat; that he saw the hole by which plaintiff's fall was caused, avoided it, and turned to call plaintiff's attention to it, but was unable to reach her before the accident occurred. Plaintiff testified that she followed the crowd with her eyes on her husband; that she did not look down at the flooring of the boat; and it was too dark for her to see, had she so looked. *Held*, that plaintiff did not show that she was free from contributory negligence. Giegerich, J., dissenting.

Appeal from city court, general term.

Two actions by Marie Fogassi against the New York Central & Hudson River Railroad Company. The actions were consolidated, and tried together. · One action was brought to recover damages for personal injuries to the plaintiff, alleged to have been received by falling from the ferryboat Kingston into the Hudson river at the Franklin street landing of the West Shore Railroad, in New York City, on the evening of the 21st day of July, 1893. The other was brought to recover damages for the loss of property consisting of personal effects, such as jewels, books, and documents carried by the plaintiff in a hand bag, including the hand bag, and an umbrella, at the time of the said fall. From a judgment of the city court (30 N. Y. Supp. 1131) affirming a judgment entered on a verdict in favor of plaintiff, defendant appeals. Reversed.

Argued before BOOKSTAVER, BISCHOFF, and GIEGERICH, JJ.

Herbert E. Kinney, for appellant.
Campora & Reville (Peter Mitchell, of counsel), for respondent.

BOOKSTAVER, J. Plaintiff, a passenger upon defendant's ferryboat, sustained injuries to her person, and to property contained in a hand bag, when in the act of passing from such boat to its land-

ing place, by reason of the presence of an interval of space by the side of the gang plank connecting the boat with the landing, through which hole she fell. The recovery by the plaintiff in the court below is assailed upon this appeal, and, in our view, justly. The evidence given in support of the cause of action shows that plaintiff's husband preceded her, in leaving the boat and proceeding over the gang plank, they forming a part of a crowd so proceeding. According to the testimony of plaintiff's husband, he saw the hole in question, avoided it, and turned to call plaintiff's attention to it, but was unable to reach her before the accident occurred. Plaintiff testified that she followed the crowd, with her eyes upon her husband; that she did not look down at the flooring of the boat; and that it was too dark for her to see, had she so looked. Upon this state of facts, we think that the plaintiff not only failed to establish the absence of contributory negligence on her part, but, by the testimony adduced in her behalf, substantially proved its presence. Thus error is presented by the exception taken to the denial of defendant's motion for a dismissal of the complaint, made at the close of the case upon that ground. Had she actually followed her husband and the crowd, she would not have suffered the injury which they escaped. Had she taken the reasonable precaution of observing the flooring upon which she was proceeding, as did her husband, she, as well as he, must have seen the hole, which the light in the locality sufficed to disclose to his view. We may concede the defendant's negligence, but, as shown, the plaintiff's case presented nothing which could call for a favorable finding by a jury. Judgment reversed, and a new trial ordered, with costs to abide the event.

BISCHOFF, J., concurs.

GIEGERICH, J. (dissenting). Plaintiff's claim of negligence, as it appears from the complaint, is that the defendant's ferryboat did not have a proper passageway leading therefrom to the bridge at the New York side, where it landed when the accident occurred; that there was not sufficient light on said bridge; that the said boat was not properly fastened and secured to said bridge; and that there was a large gap between said ferryboat and said bridge. And it is alleged that in consequence thereof the plaintiff fell into the gap aforesaid, striking the said bridge, and falling into the water of the Hudson river, thereby sustaining the injuries of which she complains. It appears from the evidence that there was a gap or open space between the boat and bridge of $2\frac{1}{2}$ to 3 feet. The record is silent as to the cause thereof. All of plaintiff's witnesses testified that it was a very dark night, while the witnesses called by the defendant testified that the lights were sufficient for them to plainly see the gang plank and the deck of the boat. In leaving the boat, plaintiff's husband was about eight feet in advance of the plaintiff, behind whom was their daughter. Plaintiff carried an umbrella and satchel containing jewelry, books, and papers, which

were lost when she fell into the water, as hereafter detailed. Her husband testified:

"When the boat got landed, I came over, and got on the plank, and, when I got on the middle of the plank, I saw a hole; and I wanted to turn around, and I had people behind me— The plank was standing here, resting on the boat and the platform,—the bridge. And I came here on the plank, and I saw a big hole, and I wanted to turn, because there was people behind me. I let those people pass before I could turn around to tell my wife to look out, and, before I had time to speak, my wife was going down. That plank was on the right-hand side of the boat, coming over. * * * I saw plank, and I saw an opening alongside of the plank when I was in the middle of the plank. There were some people who went off the boat ahead of me. There were some people beside my wife and daughter behind me. I couldn't tell how many in all were on the boat. I guess it was fifty. I don't think it was so many as a hundred. I think there were about fifty. When my wife fell in, the people that were coming off the boat stood some on the boat yet, and some on the plank behind. The people didn't push me. I didn't see any pushing."

Plaintiff testified:

"I was following the crowd, and all at once I went in the water. I fell in a hole. I thought I was on the plank, and I was not. Q. How wide was the passageway from the boat down to the bridge? A. I didn't see it. Q. Do you know how wide it was between the posts where you were going out? A. I could [evidently meaning "could not"] see how wide it was, because there was too much of a crowd for me to see. I do not know how wide it was between the boat and the bridge, where I fell through. If I saw it, I would not have gone through. * * * I had in my hand a satchel and my umbrella. I carried a satchel in my right hand, and the umbrella on this side. Q. Where were you looking towards before you fell? A. I was watching my husband,—which side he was going. Q. You were looking towards him? A. Yes, sir. Q. You were looking towards him all the way out from the boat until you fell? A. Yes, sir. Q. Looking at him? A. Yes, sir. Q. Not looking down? A. No, sir. Q. Could you see the floor of the boat when you were going out? A. No, sir; I didn't look at the floor. I walked right on with the crowd that were close up to me. I could have looked down, if there had not been a crowd; but the crowd was too great to look, and I went right on with it. They were in front of me and back of me. I couldn't tell if there was a great many back of me. As I came off from the boat, the crowd were half gone off the boat. There was a good many out, because I don't like to come out when it is so crowded. I always do wait. I wait until a crowd is off. Q. And you waited until the crowd was off this time? A. Well, I waited until they were nearly off. There were some. * * * When I was going off they were on the side of me. They were not in front of me. Q. Both sides of you? A. No; on one side. I cannot remember how many there were right there. For me, it was not light there. I don't know what it was for the others. It was very dark, for me. There was not light enough for me to see the floor of the boat. The people who were going off ahead of me were at the right-hand side of me. They were not directly in front of me."

The daughter of plaintiff, testifying, said:

"I was behind my mother. I couldn't tell how much behind my mother I was at that time. I saw my mother. There was a crowd going off the boat at that time. It was dark there. I saw my mother fall into the river. I didn't see the opening before I went off the boat. I saw it after my mother fell in. When I did see it, it was not where the plank was. It was between the boat and the bridge."

The appellant insists that the evidence was not sufficient to authorize inference of its negligence, and plaintiff's freedom from negligence, and hence that there was error in the refusal of the trial

justice to dismiss the complaint upon defendant's motion, made when the plaintiff rested, and renewed at the close of the entire case; and its counsel contends that while the plaintiff was on her way from the ferryboat the defendant was not under the strict obligations towards her of a common carrier. Conceding, without holding, such to be the case, it must nevertheless be held that the duty a ferry company owes to passengers going on and off its boats is to conduct its business with such care and skill as will make the entrance to and exit therefrom safe for persons of ordinary prudence. Race v. Ferry Co., 138 N. Y. 644, 34 N. E. 280. This it manifestly failed to do, by leaving unguarded and unlighted a gap or space between the boat and bridge of the dimensions indicated. Boyce v. Railway Co., 118 N. Y. 314, 23 N. E. 304. Appellant's counsel argues that the authority of the case of Boyce v. Railway Co., supra, has been destroyed by the decision in the subsequent case of Ryan v. Railway Co., 121 N. Y. 126, 23 N. E. 1131; but a reading thereof shows, on the contrary, that the doctrine of the Boyce Case is expressly approved, and the distinguishing features of the two cases are clearly pointed out, to wit, that in the Boyce Case the negligence imputed to the company was not from the existence of the opening, but for leaving it unguarded and unlighted, while in the Ryan Case no such omission was charged, and the negligence averred rested upon the question of the opening itself being wider than prudence permitted or necessity required. It is also contended by appellant's counsel that the rule established in the Boyce Case has been practically reversed by the decision in Hanrahan v. Railway Co., 53 Hun, 420, 6 N. Y. Supp. 395, affirmed 130 N. Y. 658, 29 N. E. 1033. But the opinion does not bear such an interpretation. In that case the plaintiff had frequently been a passenger upon the defendant's cars, and had always used the station upon which the accident happened; and although she knew that the space existed between the car and the station, and that she must step over this space to reach the platform of the car, she did not look, or take any precaution whatever, when she stepped between the car and the station. But in the present case the plaintiff had no knowledge of the existence of the space between the boat and the bridge, nor does it appear that she had ever before been a passenger upon the boat. It does appear, however, from the evidence, that the plaintiff did look, and took precautions, when she was leaving the boat. The case of Race v. Ferry Co., supra, is also distinguishable from the present one. There the plaintiff testified that she did not know whether the light was so dim, or not, that she could not see, while in the case before us the plaintiff testified that there was not light enough for her to see the floor of the boat.

Contention is also made by appellant's counsel that "no vessel or vehicle of any sort is known to mankind which fits so exactly to its landing place that passengers may heedlessly pass from the conveyance to terra firma." Yet in the Boyce Case the court said: "Even if the open space was necessary, owing to the peculiarities of the location, it was not necessary to leave it unguarded and unlighted;" and in the Ryan Case the court held that "the locality

should be well lighted, so that the passengers can see what the opening is, and it was that omission which was the determining element in the Boyce Case."

Appellant's counsel further argues that the company furnished a gang plank, but the evidence shows, and the jury by their verdict found, that the plaintiff could not see the same, owing to the darkness which enveloped her. Hence, proofs of the defendant's negligence were such as to require their submission to the jury. Boyce v. Railway Co., supra.

It is most strenuously urged by appellant's counsel that plaintiff was guilty of contributory negligence, this claim being based largely on the fact that plaintiff did not look down; but failure to do so is accounted for by her testimony that there was not light enough to see the floor of the boat. The fact that plaintiff's eyes followed in the direction of her husband indicates, instead of negligence, that she used due precaution against danger. The remarks of Vann, J., page 318, 118 N. Y., and page 304, 23 N. E., who spoke for the court in the Boyce Case, are singularly pertinent to the question of contributory negligence in the present case:

"* * * In this case the plaintiff was ignorant of any circumstance requiring the use of special care, and hence was relieved of the necessity of showing that she used special care. The apparent situation was free from danger. With her limited knowledge of the facts, what should she have done that she did not do? Ordinarily, what everybody does is all that anybody need do. Unconscious of danger, she did what the other passengers did. If she had known of the hole, or if it had been light enough for her to see it by the exercise of ordinary care, a different question would have been presented. Under the circumstances which she had a right to assume existed, she was under no obligation, as matter of law, to look before she put her foot down; but it was a question of fact for the jury to decide, not only whether she should have been more vigilant, but also whether, if she had looked, she could have seen the hole in the surrounding darkness. * * * The circumstances did not require that freedom from contributory negligence should be shown by direct testimony, but they permitted the inference to be drawn, from the general testimony of all the evidence, in favor of the plaintiff."

It follows from these views that the trial justice properly refused to nonsuit the plaintiff.

The defendant asked the court to charge:

"Fourth. The defendant is not bound to construct the deck of the boat, the gang plank, or bridge, or any of them, so as to make accidents to passengers impossible."

The court answered:

"With reference to that, gentlemen, they were bound to use all reasonable modern improvements to lessen the possibility of accident or danger to passengers. They were not bound to make it impossible to have an accident, but they were bound to use all reasonable care and reasonable appliances to lessen the possibility of accident to passengers crossing. I decline to charge as requested, and charge as modified."

This instruction is sanctioned by decisions in the cases of Cleveland v. Steamboat Co., 68 N. Y. 306, 310, and Loftus v. Ferry Co., 84 N. Y. 455, and is warranted by the rules laid down in Race v. Ferry Co., supra. Hence, in effect, the judge did charge the request, but with an explanation which presented the rule of law with due qualification.

The defendant further asked the court to charge:

"Sixth. If it was dark when the accident happened, and the deck, gang plank, or bridge, or any of them, were not plainly visible, these facts made it incumbent upon the plaintiff to exercise greater care."

The court replied:

"I decline to charge literally as requested. I have charged you, gentlemen, that the plaintiff was bound, in view of the hour,—in view of the surrounding situation,—to exercise ordinary care, and no more than that. She had a reasonable right to assume that she could pass in safety from the deck of this boat to the dock or bridge, and in exercising that assumption she should be cautious to exercise it in view of the hour, and of the darkness existing on the occasion. I decline to charge literally as requested, and charge as modified."

This instruction finds ample support in the rules laid down by the Boyce Case, which the present case, in principle, greatly resembles; and it is also consistent with the rule laid down in Lafflin v. Railroad Co., 106 N. Y. 136–142, 12 N. E. 599, cited by appellant's counsel, as will be seen by referring to that portion of the charge wherein he instructed the jury that it was incumbent upon the plaintiff to be cautious, "and exercise it in view of the darkness existing on the occasion." The exception to the refusal to charge as requested, and to the modification as charged, was therefore not well taken.

The defendant further requested the court to charge:

"Eighth. While the plaintiff was on her way from the ferryboat, the defendant was not under the strict obligations towards her of a common carrier."

To which the court answered:

"I have charged you, gentlemen, what degree of care they were called upon to exercise. I decline to charge as requested, and state that I have already charged upon that subject."

The trial judge, theretofore, at the request of the defendant, had charged:

"Fifth. The defendant is bound simply to exercise ordinary care in view of the dangers attending their use, and make them reasonably adequate to the purpose for which they are devoted."

This instruction is in accord with the position contended for by the appellant, namely, that the defendant was bound only to the exercise of ordinary care. As to the liability of a ferryman for the safety of a passenger, a more stringent rule, I think, can be invoked from the authorities. Cleveland v. Steamboat Co., supra; Loftus v. Ferry Co., supra; Race v. Same, supra; Osborn v. Same, 53 Barb. 639, 642; May v. Hanson, 5 Cal. 360, 63 Am. Dec. 135; note to Chevallier v. Straham, 47 Am. Dec. 653; Beach, Contrib. Neg. (2d Ed.) § 284, and citations. Yet, as to the property carried by the passenger, and kept by him under his control while upon the ferryboat, the rule is that the ferryman is not under the obligation of a common carrier, but is bound only to due care and diligence. Wyckof v. Ferry Co., 52 N. Y. 32, 35; Mayor v. Starin, 106 N. Y. 11, 12 N. E. 631; White v. Winnisimmet Co., 7 Cush. 155. It follows from these views that the exception taken to such refusal to charge as requested was without merit. For these reasons, to my mind, the judgment appealed from should be affirmed, with costs.