time of the plaintiff's application (January 18, 1895) to this defendant for the sick benefits which constitute the claim in suit, and that it was enacted between May 1, 1894, and the above date, but there is no further particularity as to this. The amendment itself, as placed in evidence, bears no date, except that upon the back of the paper appears a note that it was received by a certain committee on August 4, 1894. The enactment itself, however, provided that it should take effect only from the time of its adoption by the supreme council and the defendant association, and the date of that adoption is a matter of pure conjecture. For all that appears, then, the plaintiff's applications to the supreme council for a permanent benefit, made prior to the date of her sick-benefit application to the defendant on January 18. 1895, were in contravention of no law of the defendant; and, her right to the sick benefits having otherwise fully accrued at that date, the refusal to pay, based upon the by-law noted, was not shown by the proofs to have been justified. If it be claimed that this by-law was retroactive, and made the plaintiff's past application for permanent benefits a bar to her right to demand benefits from the defendant, then it may only be said that so far the by-law was unreasonable, and so inoperative. Coyle v. Society, 17 N. Y. Wkly. Dig. 17. The right reserved by the association to make by-laws intends only a right to make reasonable by-laws. Weiler v. Aid Union, 92 Hun, 280, 36 N. Y. Supp. 734. And the member's assent to the association's retaining the right to amend the by-laws does not reasonably import an assent to a law whereby, from some past action of the member, unimportant at the time, a discharge of the association from its obligations under the contract resulted. Were such the nature of the agreement, the member's rights, which might have fully accrued, and for the enjoyment of which regular payments have been made, could practically, in every case, be observed or repudiated at the will of the association, and the functions of a benefit society need be exercised only as a matter of charity. From this method of adjusting the contract, benefit might accrue to some persons connected with the transaction, but certainly not to the beneficiary. It may be that upon a new trial the defendant may establish its defense by proof that the plaintiff applied to the supreme council for permanent benefits intermediate the dates of the amendment and the application for sick benefits, which was denied upon the strength of the amendment, but upon the present record we can but hold such defense to have failed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.

---

(19 Misc. Rep. 108.)

### FOGASSI v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Term, First Department. January 25, 1897.)

INJURY TO PASSENGERS LEAVING FERRYBOAT—CONTRIBUTORY NEGLIGENCE.

A passenger on a ferryboat is chargeable with contributory negligence where her fall into a space about two feet wide between the boat and the dock would not have occurred if she had looked where she was walking, or had followed the other passengers leaving the boat.

Appeal from city court of New York, general term.

Action by Marie Fogassi against the New York Central & Hudson River Railroad Company for personal injuries caused by falling from the ferryboat Kingston into the Hudson river at the Franklin Street Ferry landing of the West Shore Railroad in New York City on the evening of July 21, 1893. From a judgment of the city court (41 N. Y. Supp. 1115), affirming a judgment entered on a verdict in favor of plaintiff for $2,000, defendant appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Ashbel Green and Herbert E. Kinney, for appellant.
Peter Mitchell and Campora & Reville, for respondent.

DALY, P. J. The plaintiff with her husband and daughter were passengers on the West Shore Railroad, operated by the defendant, and were transported across the Hudson river in a ferryboat, landing at the foot of Franklin street about 9 o'clock at night. The passengers had to leave the boat by means of a plank laid from the boat to the dock across a gap or opening about two feet in width between the boat and the dock or bridge. Into this opening the plaintiff fell, and the question is whether such fall was due, in any degree, to her neglect of ordinary precautions while attempting to leave the boat. Upon the previous appeal to the general term of the common pleas upon a similar verdict in her favor, it was held that she not only failed to establish the absence of contributory negligence on her part, but, by the testimony adduced in her behalf, substantially proved it, because she testified that she followed the crowd, with her eyes upon her husband, who preceded her, and did not look down at the floor of the boat, and that it was too dark for her to see, had she so looked; that, according to the testimony of her husband, he saw the hole in question, avoided it, and turned to call her attention to it, but was unable to reach her before the accident occurred. And the court held that, had she actually followed her husband and the crowd, she would not have suffered the injury which they escaped, or, had she taken the reasonable precaution of observing the floor upon which she was proceeding, as her husband did, she, as well as he, must have seen the hole which the light in the locality sufficed to disclose to his view; and so the judgment in her favor was reversed, and a new trial ordered. Fogassi v. Railroad Co., 13 Misc. Rep. 102, 34 N. Y. Supp. 116. Upon the new trial the case for the plaintiff was not substantially altered. While there was a dispute as to whether the lights furnished by the defendant were sufficient to make the danger visible, yet, if the plaintiff's contention be true, that the light was insufficient and the place was dark,—a hardly plausible contention, in view of her husband's testimony that he saw the opening, and turned to warn her of it,—there still remains the question as to whether she exercised care proportionate to the circumstances of the case. Upon the question as to whether she looked down, or not, when leaving the boat, there is a discrepancy between her testimony on this and the former trial; but I do not regard this difference as very material, since the plaintiff was un-

familiar with the English language, and may have misapprehended the point of the questions addressed to her.

The plaintiff's want of care is established by her own testimony. Conceding that she tried to see when she was stepping on the plank, but could not, because of the crowd and the insufficient light, it is substantially shown that the light, if insufficient at that point, or at that moment, was so by reason of the shadows and of the obstruction caused by other passengers passing off at the same time. Such obstruction, and the darkness it caused, must manifestly have been but temporary; and a prudent person would have halted an instant, if she found that her next step would be in the dark. There was no pretense that she was in a crowd too dense and pushing for her to extricate herself, and that she was compelled to pass on blindly, as is often the case in going to and from public conveyances, and as was the case in Fox v. City of New York, 5 App. Div. 349, 39 N. Y. Supp. 309, where a passenger was injured in alighting from a Brooklyn Bridge car, and where the court said: "Cars are run closely, and emptied quickly. One moving out with the crowd is obliged, to some extent, to keep step with it." In this case it is not claimed that the plaintiff was so circumstanced, and it affirmatively appears from her own testimony that she could choose her time for landing. "I let the crowd go till it got clear, and, when I saw the crowd was getting kind of light, I started myself." It thus appears that plaintiff was under no necessity or compulsion to proceed before she could assure herself of the safety of the passage, and her next testimony indicates clearly that the accident was the result of her neglect of any precaution at that moment. She testifies, "And I got near the crowd, and I looked up after that." In effect, as she approached the landing she did not attempt to see where she was going, but looked up. She afterwards testified that just before she fell she was looking for her husband; that she could not look down all the time; that she did look, but could see nothing, for the crowd; that before she fell it was too dark; that she was looking down, but could see nothing. The attempt was thus made to show that the plaintiff, in following the crowd, was prevented from seeing where she went, and so fell into the hole in question; but this theory was completely disproved by the fact that no other passenger fell, and that, if she had actually followed the crowd, she would have gone upon the plank, and would have reached the dock in safety. Her testimony on the first trial, as to the position of the crowd, was that the people who were getting off ahead of her were at her side, and to her right. On this trial she substantially testified to the same thing, but also stated that there were lots of people in front of her. But the accident unquestionably occurred by her attempting to land by walking to the left of the crowd and of the plank; that the hole or gap into which she stepped was not perceived because she was not looking, or was not perceived because the crowd prevented her seeing. If the former, her negligence was manifest, and, if the latter, then it was imprudent for her to attempt to take a step in the dark. In this respect the case is like Heaney v. Railroad Co., 112 N. Y. 122, 19 N. E. 422, where the view was obscured by

flitting clouds of smoke of a railway train. The court held that it was the duty of the wayfarer to await the disappearance of the smoke, until he was reasonably sure that he had clear crossing. It was the duty of the plaintiff, in this case, to wait until her view of the place in which she was about to step was unobstructed by the shadows cast by the moving crowd. That every person stepping upon or off a ferryboat in the nighttime is in a position of such risk as to call for the precaution, at least, of observing where he steps, is a proposition that requires no support by argument or authorities. In this case the plaintiff went on without looking, or, if she did look, could not see, because the view was obstructed by the shadow cast by the crowd of moving passengers; and, in proceeding under such circumstances, she took the risk of whatever might occur.

We cannot see that the plaintiff's case was bettered by the evidence upon the new trial, and the judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.